GEORGE WHITAKER, Treasurer of the South Trenton Cheese Company, Respondent, v. WILLIAM H. CHAPMAN and GEORGE W. SWEZEY, Appellants.

(GENERAL TERM, FOURTH DEPARTMENT, OCTOBER, 1870.)

A debt due from a factor for goods sold by him on commission is a debt created "in a fiduciary character," within the meaning of the bankrupt act (§ 33), and is not covered by the debtor's discharge in bankruptcy.

*In re James W. Seymour* (6 Inter. Rev. Record, 61), approved and followed.

When a finding by the court adversely to a fact claimed by the unsuccessful party, is necessary to support the judgment, and the evidence warrants it, such adverse finding will be presumed.

A circular, stencil plate, and form of invoice delivered to the plaintiff by the defendant while soliciting consignments of goods for sale, held admissible, as evidence bearing upon the terms on which the consignment was afterward made, and the character in which the defendants proposed to the plaintiff to act in receiving the same.

THIS was an appeal, taken by the defendant from a judgment entered against him on the decision of the court.

The plaintiff brought the action as treasurer of "The South Trenton Cheese Company," an association of more than seven persons, carrying on the manufacture and sale of cheese, and claimed on behalf of the association to recover from the defendants, who were partners as factors or commission merchants, doing business in New York, the proceeds, less commissions, of 152 boxes of cheese, which the plaintiff claimed to have delivered as such treasurer to the defendants,

to be sold for cash, with immediate return of the net pro- ceeds to him.

The defendants severally denied that the cheese had been delivered to them to be sold for cash, with immediate return of the net proceeds, and claimed to have received the cheese for sale, with a guaranty to the plaintiff of payment for the sales, made by them according to the custom of their trade; and they severally set up a discharge in bankruptcy, which they claimed released them from the debt otherwise due for the sales made of the cheese.

The plaintiff gave evidence, that some few days previously to the delivery of the cheese to the defendants, they, the defendants, had solicited from him the custom of the associa- tion, and at the same time had given him a circular setting forth the particulars of their business, a form of bill of invoice, and stencil plate for marking goods, with the defend- ants' firm name of "Chapman & Swezey," which were, against the defendants' objection, that it was incompetent, irrelevant and immaterial, received in evidence. The plain- tiff also proved delivery of the cheese, marked by the stencil plate, to the defendants, and against like objections intro- duced a bill or memorandum of sales furnished to him by the defendants, which set forth the items of expense incurred, the sales of different parcels of the cheese, and the balance, or net proceeds of the sales due to the association; he also, against like objections by the defendants, proved and intro- duced a receipt given by the freight agent, at the railroad depot at Utica, for the cheese, directed to the defendants at New York.

The defendants, with other evidence, proved their several discharge in bankruptcy, and the court found, in addition to the undisputed facts, that the plaintiff as treasurer, &c., had delivered to the defendants' firm the 152 boxes of cheese, to be sold by them on commission for the association, and receipt of the same by the firm to be so sold; also the sale of the cheese; also a balance as claimed by the plaintiff of net proceeds; also that the firm, though requested, had not paid

over, but had converted such net proceeds to their own use; also that each of the defendants' had been discharged in bankruptcy, after such conversion; and also, as conclusions of law, that the defendants, in the receipt and sale of the cheese, acted in a fiduciary character on behalf of the association, or of the plaintiff as treasurer thereof; that the discharge in bankruptcy of the defendants, and each of them, did not discharge them or either of them from the debt; and ordered judgment for the amount demanded in the complaint.

*E. J. Richardson,* for the appellant.

*J. R. Swan, Jr.,* for the respondent.

Present—JOHNSON and TALCOTT, JJ.

By the Court—JOHNSON, J.   Upon the facts found by the judge, at Special Term, the judgment is clearly right.   The debt was created by the defendants while acting in a fiduciary character, and was in no way affected by their discharge in bankruptcy afterward.   The discharge does not absolve any party from the enforcement of a debt of that character against him, by the express terms of the bankrupt act (section 33).   It is claimed, on behalf of the defendants, that the property sold by them was received and sold upon an undertaking on their part, that they should guaranty to the plaintiff payment of the amount of sales less their commission. But this fact, if important in the case, is not found by the court, and the presumption is, that the finding was the other way, if such adverse finding is necessary to support the judgment, and the evidence in the case would warrant such finding.   (*Valentine* v. *Conner*, 40 N. Y., 248.)   Upon looking into the evidence, it is seen that the judge who tried the action might well have found, that the property was sent by the plaintiffs to the defendants, to be sold by them upon commission in the ordinary manner, and that there was no agreement, express or implied, that defendants were to be

guarantors of credit sales, or otherwise. This being the case, the debt was clearly contracted while the defendants were acting in a fiduciary character, within the meaning of our Code, and according to numerous decisions under it in our own State.

Under our present bankrupt act of 1867, the discharge does not extend to a debt created by the bankrupt "while acting in any fiduciary character (section 33). *In re James W. Seymour* (6 Internal Revenue Record), 61, it was held by BLATCHFORD, J., that if the debt was created while the debtor was acting in any fiduciary relation with the creditor, and in the business in which the relation was created, the bankrupt act would not affect it. In that case one Roswig had deposited with Seymour, who was a wholesale jeweler, jewels to be sold on a commission of five per cent for selling. The latter had sold the jewels and refused to pay over the proceeds. Action had been commenced against him, an order of arrest obtained, and the defendant arrested upon execution of the judgment for the proceeds of the sale less the commission. Pending the action, proceedings in bankruptcy had been instituted against Seymour, and he obtained a writ of *habeas corpus* to procure his discharge from the arrest under the execution. The learned judge held that proceedings and discharge in bankruptcy could not affect the case, as it was a debt contracted by the defendant while acting in a fiduciary character. It was held that the present bankrupt act had intentionally been made broader than the bankrupt act of 1841. By that act "all persons owing debts, created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary character," were excluded from its benefits. But the Supreme Court of the United States, in *Chapman v. Forsyth* (2 How. U. S., 202), restricted the latter clause "any other fiduciary character" "to trusts of the same class" with those previously mentioned, which were express trusts, and not those implied by law, and held that a factor was not within the act. This construction was given to that clause

upon the principle of the maxim *noscitur a sociis*. In the present act no particular class of trusts is mentioned, and there is no such limitation. All debts are excluded which are contracted "while acting in any fiduciary character." And so it was held, in the case before referred to, that a debt created by a factor was within the present bankrupt act. This is manifestly correct. The language of the act is general, and there is nothing in its provisions which can be construed to confine such debts to any particular class or kind of trusts.

The defendants' circular was properly received in evidence. It was a paper delivered by the defendants to the plaintiff when they solicited his custom, and had an important bearing upon the terms and conditions upon which the property was sent, and the character in which the defendants purposed to act, and did act in the transaction. The bill of invoice and stencil plate delivered at the same time were evidence for the same purpose. The bill of sale was also properly received. It was the account rendered by the defendants, of the sales made by them, and the prices and amounts for which the property had been sold.

The receipt of the freight agent on the delivery of the cheese at the railway depot, whether properly received in evidence or not, was wholly immaterial, and could by no possibility have prejudiced the defendants. The defendants admitted the receipt and sale by them of the cheese. If it was an error to receive it in evidence, it was altogether harmless and would afford no ground for the reversal of the judgment.

The judgment must therefore be affirmed. This being an appeal from a judgment rendered by the presiding justice he does not sit in the case.

Judgment affirmed.