AMASA M. BARBER, Appellant, *v.* JAMES STERLING, Respondent.

Plaintiff, defendant and E. entered into a contract by which E. leased to plaintiff a furnace and fixtures "for a term long enough to make and manufacture 1,000 tons of iron," and agreed to furnish the ore for that purpose at a specified price per ton; plaintiff agreed to purchase ore, to repair the furnace and to manufacture the iron; defendant was to act as plaintiff's agent in the work of repair and in manufacture; the iron manufactured was to belong to plaintiff, who was to sell the same, and, out of the avails, to retain all advances made by him, with interest, together with two per cent on the net sales, and the

amount of a certain note, and to pay the balance to defendant and E., as compensation for services and the use of the demised property. The parties went on under the contract. Defendant, with the knowledge and assent of plaintiff, sold the iron manufactured, using a portion of the avails in the purchase of materials and payment for labor; he failed to pay over a portion of the proceeds; he overpaid for labor and materials; and he appropriated to his own use profits arising from the buying and selling of land and personal property to which plaintiff was entitled, and which were connected with the other transactions. In an action to recover the amount due plaintiff, defendant pleaded his discharge in bankruptcy. *Held* (EARL, J., dissenting), that the parties to the contract had a mutual interest in the sales, and the obligation incurred by defendant was not a debt created while he was acting "in a fiduciary capacity" within the meaning of the bankrupt act (§ 33); and that the discharge in bankruptcy was a good defence.

(Submitted January 17, 1877; decided January 30, 1877.)

APPEAL from judgment of the General Term of the Supreme Court in the fourth judicial department, affirming a judgment in favor of defendant, entered upon the report of a referee.

The complaint in this action alleged in substance, that the parties entered into a contract — which was annexed — in pursuance of which, defendant, as the agent of plaintiff, manufactured and sold a quantity of iron, but failed to account to plaintiff therefor and converted the same to his own use in violation of the provisions of said agreement. It asked that defendant be required to account, and for judgment for the balance unpaid to the extent of plaintiff's claim.

The contract referred to was as follows :

"Agreement made this the 18th day of February, A. D. 1863, by and between Amasa M. Barber, of the town of Philadelphia, county of Jefferson, and State of New York, of the first part, and James Sterling, Jr., and Elizabeth S. Sterling, wife of A. P. Sterling, of the same town, county and State, of the second part —

" Witnesseth : That the said Elizabeth S. Sterling, wife of A. P. Sterling, one of the parties of the second part, hereby agrees to dig and prepare for drawing at the Foster ore bed in the town of Antwerp, ore sufficient to make 1,000 tons

of iron at such time and in such quantities as the party of
the first part may want the same, and the said Elizabeth S.
Sterling hereby agrees to and does lease to the party of the
first part the Sterlingville furnace, water privilege, fixtures
and appurtenances for carrying on the said furnace now on
hand for a term long enough to make and manufacture 1,000
tons of pig iron, and the party of the first part for and in
consideration of the above stipulation to be performed by
the said Elizabeth S. Sterling, hereby agrees to take ore
enough to make 1,000 tons of iron, and to pay the said Eliza-
beth S. Sterling therefor at once after the rate of one dollar
and twenty-five cents per ton on the ore at the bed dug and
and prepared as aforesaid, which is to be paid as fast as 100
tons are dug, delivered and drawn from the said bed by the
party of the first part, and the party of the first part for the
use of the said furnace and fixtures for the term aforesaid,
agrees to pay to the said Elizabeth S. Sterling, the sum of
one dollar; and it is further agreed by and between all the
parties to this agreement that the said party of the first part
is to furnish the money to repair the said furnace and fixtures,
and fit and prepare all things necessary to fit the said furnace
for work, and to buy the ore and manufacture the same into
pig iron, and the party of the second part, to wit, James
Sterling, is to act as the agent of the party of the first part
in the repair of the said furnace and manufacture of the said
iron as aforesaid.

"And it is further agreed, that the party of the first part is
to have, hold and own all the iron so made as aforesaid, and
to sell the same at the best prices he can get, and out of the
avails of the sales of such iron, the party of the first part is
to be paid all the money he has advanced in buying ore,
repairing the furnace and fixtures and in manufacturing the
iron and the interest on the same from the time it was
advanced together with two per cent on the net sale of the
iron, for this trouble and labor in the manufacture of the said
iron, and also the party of the first part is also to retain out
of the sales of the iron made as aforesaid the amount of a

certain note given to Annie Sterling, and dated the 19th day of May, 1858, for $445, and the interest on the same to date of payment and the balance of the money arising from the sale of such iron, is to be paid over to the party of the second part to wit, Elizabeth Sterling and James Sterling, Jr., and the same is to be received by the said party of the second part in full satisfaction for the use of the furnace, fixtures, land and premises around the furnace, and all things connected therewith, and also in full satisfaction for their labor, care and attendance in and about the business and manufacture of the said iron, and it is further agreed that the said James Sterling, Jr., is to give his time and attendance to the manufacture of the said iron as aforesaid, and to receive his compensation as aforesaid, and no other compensation whatever.

Given under our hands and seals this 18th day of February, 1863.

AMASA M. BARBER,     [L. S.]
JAMES STERLING, JR.,     [L. S.]
ELIZABETH S. STERLING.  [L. S.] "

The answer set up as a defence, among other things, defendant's discharge in bankruptcy. The referee found, in substance, that defendant manufactured iron under the contract, and sold and disposed of the same, failing to pay over part of the proceeds ; that he also overpaid for labor and materials ; and that he appropriated to his use the profits growing out of the business of plaintiff in the buying and selling of lands and personal property ; and that he became indebted to plaintiff, on account of said matters, in the sum of $6,904.03 ; that, after the incurring of said liabilities, defendant was duly discharged from his debts by a decree in bankruptcy. Defendant made sales with knowledge of plaintiff, keeping an account of receipts and disbursements.

Further facts appear in the opinion.

*H. S. Gipson* for the appellant. Defendant's obligation was a debt incurred while acting in a fiduciary capacity, and is

excepted from the operation of the bankrupt act. (*In re Seymour*, 6 Ins. Rev. Rec., 61; 1 Bine., 348; *In re Kimball*, 6 Blatch., 292; *Lemcke* v. *Booth*, 47 Mo., 385; 4 Am. R., 326; *Whittaker* v. *Chapman*, 3 Lans., 155; *White* v. *Platt*, 5 Den., 269, 273–274; *Cronan* v. *Cotting*, 104 Mass., 245; *Smith* v. *Edmonds*, 1 Code, 86; *White* v. *McAllister*, id., 106; *Roberts* v. *Prosser*, 4 Lans., 369; *Stokes* v. *Mason*, 12 N. Bk. Reg., 498; *Clark* v. *Pinckney*, 50 Barb., 226; *Baker* v. *Spencer*, 47 N. Y., 562; 53 id., 260; 23 How., 452; 2 Keyes, 9.)

*B. Bagley* for the respondent. Defendant's discharge in bankruptcy defeated plaintiff's claim. (9 Abb., 95; 117 How., 517; 32 Barb., 90; 52 N. Y., 615.) The conduct of the parties showed that their business should be conducted as between debtor and creditor, or as copartners. (16 J. R., 34; 15 Wend., 187.)

MILLER, J. Under the agreement between the plaintiff, defendant and Elizabeth Sterling, the defendant was to act as the agent of the plaintiff in the repair of the furnace and manufacture of iron which was provided for.

The complaint alleges that he had charge mainly of the sales of iron as well as the manufacture thereof; that he sold and disposed of large quantities thereof, and failed to pay the plaintiff or account to him therefor, but converted the same to his own use, in violation of the provisions of said agreement.

The proof shows and the referee has found, that the defendant sold and disposed of iron and failed to pay over the proceeds of the sales; that he overpaid for labor and materials, and appropriated to his own use profits arising from the buying and selling of lands and personal property. All of these transactions are not especially provided for by the agreement, but the evidence tends to establish that the sales were made by the defendant under and by the authority of the plaintiff, and that the avails of the sales were used in the ordinary course of the business, and an account kept of the same by the defendant. The defendant's duty under the

agreement, as already stated, was to act as agent in making repairs and in the manufacture of iron, and what he did beyond this was with the plaintiff's knowledge and assent, and appears to have been quietly acquiesced in. There was no express contract and no relationship of agent and principal agreed upon between the plaintiff and the defendant. But the defendant was interested in the sales, being entitled to a share of the money arising therefrom after certain deductions were made under the agreement. The sales of the land and personal property were also connected with and a part of the other transactions, as well as the payment of the moneys for labor and materials in the business. The defendant was, therefore, acting in part for himself and Mrs. Sterling as well as the plaintiff. They had a mutual interest in all these transactions, and the obligation incurred by him was not a debt created while acting in a fiduciary character, within section 33 of the bankrupt act, which was not and could not be discharged by the proceedings in bankruptcy.

Conceding that the provision of the bankrupt act of 1867 is broader and more comprehensive than that contained in the act of 1841, yet, applying to defendant's acts the effect of such a construction, it is not apparent that defendant occupied a fiduciary relationship, within the authorities to which we have been referred, as is manifest by an examination of these decisions. In each of the cases cited there was a positive and defined relationship between the parties, in which the fiduciary character was entirely apparent. *In re Seymour* (1 Benedict, 348) goods were deposited with Seymour to be sold by him on commission for the owner, and it was held that this established a fiduciary relationship which charged Seymour with the execution of a trust, under which it was his duty to return the property or remit the proceeds, and his failure to do so was a defalcation while acting in a fiduciary capacity, and that the demand was therefore a debt within section 33 of the bankrupt act which could not be released by his discharge in bankruptcy. This case also holds that the act of 1867 is broader than the act of 1841. *Lemcke* v. *Booth*,

(47 Mo., 385), holds that a factor or commission merchant stands in a fiduciary relation to his principal within the meaning of section 33, thus following the Seymour case. The same principle is also decided in *In re Kimball* (6 Blatch. C. C. R., 292), by Judge NELSON, on an appeal from the District Court. (See also *Wardwell* v. *Holloway*, 12 Nat. Bank Reg., 61; *Duguid* v. *Edwards*, 50 Barb., 288; *Whitaker* v. *Chapman*, 3 Lans., 155; *Roberts* v. *Prosser*, 53 N. Y., 260.) The cases cited rest upon the principle that there was an agreement between the parties by which the relationship of principal and agent was created, or that by virtue of the same the party disposing of the property or money held as a factor or commission merchant, and thus occupied a fiduciary relation to his principal within the meaning of section 33 of the bankrupt act, or within section 179 of the Code of this State, which is somewhat analogous, and provides for the arrest of a defendant in an action for money received, embezzled or misapplied by any "factor, agent, broker, or other person in a fiduciary capacity." The defendant was not included within either of these terms. He was not a factor, as he had no control over the manufactured iron, or any right under a special agreement as a factor or agent to sell or dispose of the same. The only proof is that he sold by plaintiff's direction, and that the avails were used in the business which he was engaged in conducting for the joint benefit of the plaintiff, himself, and Mrs. Sterling. The plaintiff evidently had knowledge of these facts, and as he did not object, or assert his claim to sell and dispose of the iron, we may assume he acquiesced in the sales of the iron and the use of the money, and in the other acts of defendant which related to the business. The defendant had an interest in the profits, and occupied more the position of a partner than an agent, as his labors in respect to the sales and the receipt and disbursement of money were performed for the benefit of all the parties to the contract. He therefore clearly did not act as plaintiff's agent, and the fact that he was such is not established. The burthen of establishing the agency was upon the plaintiff, and in the absence

of positive and direct evidence it cannot be claimed that the proof showed either an express agreement or circumstances from which the inference fairly follows that the defendant was the managing agent charged especially with the duty of selling the iron, and under an agreement to account for the same. He neither acted in the capacity of agent, broker or factor. Although the plaintiff had a right to sell the iron he allowed the defendant to control it as he did, and the evidence. shows that aside from the written contract the arrangement was extremely imperfect, and not well defined. No time was fixed for rendering and for a settlement of defendant's accounts. No account was either rendered by defendant, or called for by plaintiff, during the period of defendant's employment, and for nearly four years the whole business was conducted in the most loose and irregular manner, so that none of the parties profited by their unfortunate venture.

Upon such a state of facts a fiduciary relationship cannot be predicated. Clearly it would not be within the intention of the law, or of the parties, but, on the contrary, it would be extremely harsh and unjust, as well as against the spirit of the law to hold that, under such circumstances, a liability was incurred by the defendant while acting in a fiduciary capacity.

The judgment was right and should be affirmed.

All concur, except EARL, J., dissenting.

Judgment affirmed.