WILLIAM J. POTH, Appellant, Respondent, v. THE WASHINGTON SQUARE METHODIST EPISCOPAL CHURCH OF THE CITY OF NEW YORK, Respondent, Appellant.

First Department, November 30, 1923.

**Landlord and tenant — specific performance of agreement to lease — oral negotiations contemplated that lease would not be executed until building loan was arranged — loan was not arranged — plaintiff failed to prove enforcible agreement to lease — plaintiff not entitled to money damages in equity suit where not entitled to any equitable relief — error to amend pleadings to conform to proof of damages where no damages claimed in complaint.**

The plaintiff is not entitled to the specific performance of an alleged agreement to lease certain premises since his own case shows merely that the parties entered into negotiations and continued the same for some time; that a tentative lease was drafted in which the plaintiff's wife appeared as lessee; that the parties did not intend to enter into a lease unless a building loan could be arranged by the defendant and that said building loan was not arranged.

The proof demonstrates that the negotiations of the parties were all based upon the consummation of the three essential elements of the transaction, the lease, the loan and the erection of a building, and that the failure to bring about an enforcible agreement for the completion of the whole scheme nullified the preliminary promises which were interdependent.

The plaintiff having failed to establish any right to equitable relief the court did not have the right to retain the suit and award a judgment for money damages.

The return of the deposit money was not asked for in the complaint and it was error to amend the pleadings to conform to the damage proof since no damages were asked for in the complaint.

APPEAL by the plaintiff, William J. Poth, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 9th day of August, 1922, upon the decision of the court rendered after a trial at the New York Special Term. Appeal by the defendant, the Washington Square Methodist Episcopal Church of the City of New York, from a portion of said judgment.

*August Dreyer* [*George D. Zahm* of counsel], for the plaintiff.

*Rabenold & Scribner* [*Charles E. Scribner* of counsel], for the defendant.

McAVOY, J.:

This is a suit for the specific performance of an agreement to lease certain premises in the borough of Manhattan, New York city. The agreement between the parties contemplated the erection of an eight-story building upon the premises, which, in part, was

to be financed through a building loan to be obtained by the defendant. The court at Special Term found that the plaintiff had made out a case entitling him to relief but, because the defendant was to obtain a mortgage out of which it was to make plaintiff a loan, specific performance could not be decreed. Thereupon plaintiff was awarded damages in the sum of $5,000. Plaintiff appeals from that judgment in so far as it refuses a decree of specific performance.

The defendant appeals from the judgment awarding $5,000 damages to plaintiff.

Plaintiff contends, *first*, that under the evidence in the case he was entitled to specific performance and, *secondly*, if he is in error in this respect, the money damages awarded him are entirely inadequate in amount. Defendant contends that the transaction between the parties never went beyond the stage of negotiations and that there was not sufficient evidence of the transaction in writing to satisfy the Statute of Frauds. (See Real Prop. Law, §§ 242, 259.)

It was found at Special Term that the plaintiff and the defendant entered into an agreement whereby the defendant agreed to lease to the plaintiff the premises known as Nos. 331–335 West Thirty-sixth street, Manhattan borough, New York city, for a period of twenty-one years, with a renewal of an additional twenty-one years on certain terms, conditions and covenants of such letting which were embodied in a certain draft of lease in evidence in the case.

Defendant claims that there was no agreement and that no lease was executed and that the finding of fact of an agreement is unfounded in proof.

The evidence demonstrates that there was no real agreement which equity could enforce. The testimony of plaintiff following is illustrative of his own notion of the transaction: " Q. When do you think that your agreement with the Church that you are suing on was made — on what date? A. My agreement would be made when that lease was signed. Q. You don't think you had any agreement until the lease was signed? A. I did have an agreement. Q. When was that made? A. On the 13th of September. Q. So your claim is that you had that agreement on the 13th of September and that the first agreement that you could possibly have would be when this lease was signed? A. I would say our agreement was the 13th day of September subject to that lease."

The only transaction on September 13, 1921, was the delivery of the $3,000 check and the signing and delivery of a receipt, which merely mentioned that a proposition had been made, without giving any of the terms, and then went on to say what should

happen to the money if the proposition were withdrawn, amended or not accepted by the defendant.

According to a proper reading of the plaintiff's own evidence, therefore, he had no agreement on September thirteenth, and he would have no agreement until a formal written lease was signed.

The facts as they appear from the plaintiff's own evidence are here outlined.

The defendant, a religious corporation, owned the premises 331–335 West Thirty-sixth street, in the borough of Manhattan. The plaintiff, an individual, following previous negotiations, attended a meeting at the church house on September 12, 1921, with respect to a proposition that he had made for a twenty-one-year lease of these premises, with an option of twenty-one years more, and the construction thereon of an eight-story loft building, the defendant to arrange the building loan. On September thirteenth the defendant received from plaintiff the check of I. A. Poth, his wife, for $3,000, for which he gave a receipt as follows:

" Received of I. A. Poth check for $3,000 on Chelsea Exchange Bank payable to the order of Washington Square M. E. Church. This amount of money is received as an earnest of Mr. Poth's good faith in connection with the proposition submitted by him this day to the trustees of the Church. In the event that the proposition so made is hereafter withdrawn or in anywise amended, the amount represented by the check shall belong to the Church without any claim of Mr. Poth or I. A. Poth to the amount or any part of it.

" In the event that the proposition is not accepted by the Church the amount represented by the check is to be returned to Mr. Poth.

" Dated, September 13, 1921.

" The check is to be certified at once but shall not be cashed except in case of default.
                                        " W. J. POTH,
                                        " D. C. MILLARD."

As testified by plaintiff, it was contemplated that a written lease would be drafted by Mr. Siefke, defendant's counsel. Siefke proceeded to draft the lease and submitted it at a meeting of the defendant's representatives with the plaintiff and his counsel, one Dreyer, at the latter's office on October 6, 1921. This draft of lease is a very voluminous document and occupies many pages of the printed record. The defendant was named as the lessor and the plaintiff's wife as the lessee. It contained the following salient features:

(1) The lease was to run for twenty-one years from October 1,

1921, with an option to the lessee to renew for twenty-one years more.

(2) The lessee was to pay a rental of $12,000 per annum, all maintenance and operation expenses, the cost of all alterations and repairs, insurance premiums and all taxes and assessments.

(3) The lessee was to demolish, remove and dispose of the existing buildings on the premises and to erect, build and equip in their place prior to February 1, 1922, at his own cost, an eight-story fireproof brick and steel building for loft use. The building was to conform to plans and specifications described as annexed to the lease.

(4) The lessee agreed to provide and deliver to the lessor on or before the execution of the lease, a surety company bond guaranteeing to the lessor the sum of $100,000 for the performance of the covenants of the lease on the part of the lessee until the completion of the building.

(5) The estimated cost of the proposed building was $170,000, and it was recited that, to assist the lessee in the erection and equipment thereof, the lessor had procured a building and permanent loan of $120,000. It was stated that the lessee had inspected and knew the terms of the building loan and mortgage executed " herewith " and agreed to comply with every condition and restriction and perform every covenant thereof as though the lessee were the borrower, except for principal, interest or other charges of the loan.

(6) As further security, the lessee agreed, upon the execution of the lease, to advance the sum of $5,000.

At this meeting on October 6, 1921, a discussion took place regarding this draft of lease and various objections were made and amendments suggested. The defendant was willing to go on with the deal at that time but the plaintiff was not willing unless certain changes were made. At one time plaintiff's counsel said that the deal was off. Afterwards on October seventh, however, negotiations were renewed and the proposed lease was further discussed and some amendments were drawn. A new draft of lease was passed between counsel about November first. Mr. Dreyer, plaintiff's counsel, testified that this was in final form, but at the trial he produced a memorandum from among his papers showing various propositions for other changes, one of which was that " as November has practically passed, the rent should start when possession is given and not before."

Efforts were made to procure the building loan of $120,000 and permanent loan of $130,000, upon which, as plaintiff testified, the signing of the lease depended. Late in November or early in

December they were negotiating with the North River Savings Bank, and defendant's counsel said they were going to get the money there. Thereupon defendant petitioned the Supreme Court and obtained an order on January 11, 1922, authorizing defendant to lease the premises to plaintiff for a period of twenty-one years at an annual rental of $12,000, with the privilege of renewal for a further period of twenty-one years, " said lease to contain the clauses usual in a lease," and authorizing the defendant to mortgage the premises to the North River Savings Bank for the sum of $130,000.

Meanwhile, the plaintiff had been trying to go ahead as if he already had his lease. He had plans drawn and submitted them to the defendant's building committee and to the North River Savings Bank. As early as September sixteenth, he had sold the wrecking rights to one Wasserman and received $700 for them. Wasserman started to wreck the building in October, but was stopped by defendant. Again on December seventh he started to wreck the building and got his cables on it before he was stopped by letter from defendant's counsel. However, as the wrecking had proceeded so far that the building was in a dangerous condition, defendant on December fourteenth instructed Wasserman to complete the demolition and he did so.

On January 9, 1922, a draft of the lease was delivered to defendant's counsel. Plaintiff testified that this was for the purpose of getting it signed by the church committee as the final proposition, although this was denied by defendant's counsel who said it was to make further changes.

Before anything further was done the North River Savings Bank withdrew its assent to make the loan, and the whole thing fell through. No lease was signed and nothing further happened until an exchange of letters between counsel on February 24, March 6, and March 9, 1922, after which plaintiff commenced this action.

At the close of the case plaintiff's counsel moved to " conform the pleadings to the proof   *   *   *   on the subject of damages " without specifying in what respect. The motion was granted over defendant's objection. Defendant moved to strike out all evidence on the question of damages, due exception having been taken to its admission during the trial, and to strike out other evidence and dismiss the complaint on specified grounds. This motion was denied.

The foundation of the whole transaction was the obtaining of the $130,000 mortgage loan, without which the new building could not be erected and without which the execution of any lease would have been futile. Every draft of the proposed lease provided that the bond and mortgage were to be executed simultaneously with the lease.

Plaintiff's testimony was: " Q. The thing that was most discussed, or one of the important things discussed, was the getting of this mortgage loan, was it not? A. Yes, sir. Q. And you understood, as well as the members of the Church, that there could not be any deal between you unless you could get that loan? A. That is right. Q. As a matter of fact, this lease was not to be signed until you had gotten the loan, was it? A. No. sir."

We find from the proof that the negotiations and dealings of the parties were all based upon the consummation of the three essential elements of the transaction, the lease, the loan and the erection of a building, and that the failure to bring about an enforcible agreement for the completion of the whole scheme nullified the preliminary promises which were interdependent. Nor could the court award damages here. The suit was wholly for equitable relief and none was found to be properly awardable. The return of the deposit money was not asked in the complaint nor was the question of its forfeiture or counterclaims against it considered. The pleading of plaintiff did not request its return, and amending the plea to conform to damage proof in an equity suit where no damages are demanded is not proper practice.

In *Jackson* v. *Strong* (222 N. Y. 149) the court (at pp. 153, 154) pointed out the ruling to be made in a like cause: " We have then a case wherein the complaint sets forth a cause of action in equity which, as the finding was, the plaintiff failed to prove on the trial, and the court without any amendment of the pleadings awarded the plaintiff damages as in an action at law. Was that proper? I think not. There is some confusion in the cases bearing upon this subject, but the weight of authority is that where some ground of equitable jurisdiction is alleged in a complaint but fails of proof in its entire scope on the trial, and it appears that there never was any substantial cause for equitable interference, the court will not retain the action and grant purely legal relief, but will dismiss the complaint. (*Dudley* v. *Congregation, etc., of St. Francis,* 138 N. Y. 451; *Arnold* v. *Angell,* 62 N. Y. 508; *Loeb* v. *Supreme Lodge, Royal Arcanum,* 198 N. Y. 180; *Walrath* v. *Hanover Fire Ins. Co.,* 216 N. Y. 220; *Freeman* v. *Miller,* 157 App. Div. 715; *Allerton* v. *Rhineland Machine Works Co.,* 165 App. Div. 557.)"

The judgment should be reversed, with costs to the defendant, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment reversed, with costs to the defendant, and the complaint dismissed, with costs. Settle order on notice.