## BERTIG v. NORMAN.

### Opinion delivered November 6, 1911.

1. ASSUMPSIT—NATURE OF ACTION.—An action of assumpsit is one for the recovery of damages for the nonperformance of a simple contract, either express or implied, and is therefore *ex contractu*. (Page 80.)

2. BAILMENT—WHAT CONSTITUTES.—In order to constitute a contract of bailment, there must be a contract expressly entered into or one arising by implication growing out of the delivery of property to the party intrusted with its care, and an acceptance of it by him. (Page 81.)

3. SAME—WHEN RELATION CONTINUES.—The relation of bailment may exist from the fact that the property has come into the possession of a person, even though accidentally or by mistake; but such relation can only exist so long as the party to be charged has notice that he has custody thereof. (Page 81.)

4. SAME—NEGLIGENCE—BURDEN OF PROOF.—As a general rule, a bailee is only liable for negligence; and such negligence must be proved by the party seeking to make him liable therefor. (Page 82.)

5. SAME—BURDEN OF PROOF.—The rule that a bailee for hire must explain the loss of the goods which came into his possession does not obtain where the bailee does not have exclusive possession of the property at the time of its loss. (Page 83.)

Appeal from Greene Circuit Court; *Frank Smith,* Judge; reversed.

*Block & Kirsch,* for appellants.

1. Though the complaint sounded in tort, yet, by his election, before going to the jury, in terms "that his cause of action is one of bailment," plaintiff in effect elected to recover on an implied assumpsit. The character of the action elected is to be determined by the object sought to be attained and not by what it is called. 53 Ark. 468; 36 Ark. 331; 73 Ark. 183; 74 Ark. 93.

Where a party waives a tort and sues in contract, he must show that the property has been disposed of for value. 11 Ark. 270; 17 Ark. 599; 31 Ark. 155; 76 Am. Dec. 318; 17 *Id.* 238 and note; 22 Mass. 285; 5 Atl. 491; 22 Am. Rep. 239. This being true, and the evidence conclusively showing that appellants did not dispose of the cotton and received nothing of value for it, the verdict must fall.

2. The seventh instruction is erroneous. It improperly classes appellants as bailees for hire and exacts a higher degree of care of them than is warranted by the evidence. Only in case of gross negligence could appellants be held liable. 11 Ark. 189; 23 Ark. 61; 61 Ark. 302. It further errs in placing the burden on appellants of explaining the loss of the cotton. 68 Ark. 284.

*Huddleston & Taylor,* for appellee.

1. Under each of the complaints, the action is one of bailment, and, in view of the allegations of the complaints and appellee's election in court to treat it as an action of bailment,

appellants are not warranted in concluding that it is an action either of implied or special assumpsit. However, where a contractual relation exists between the parties, such as bailee and bailor, a tort arising out of a breach of duty imposed by the relation may be waived and special assumpsit maintained. 4 Cyc. 331; 17 So. (Ala.) 536; 9 Ark. 85; 38 Pac. (Cal.) 457; 42 N. W. 384; 1 N. J. L. 344; 39 N. Y. 297; 25 Am. Dec. 596; 27 Atl. 38; 22 S. E. 734.

2. Even if appellants were gratuitous bailees, the law imposes upon them the duty to account in some manner for the cotton. 74 Ark. 282; 67 Ark. 284; 28 L. R. A. 716; 5 Cyc. 175. Where the property is lost or stolen, it must appear that it was not due to the fault or negligence of the bailee; otherwise he is not excused. 100 Am. Dec. 298; 5 Cyc. 186, 187.

FRAUENTHAL, J. This was an action instituted by Joseph Norman, the plaintiff below, to recover the value of a bale of cotton which he owned. It was originally instituted in a justice of the peace court against Bertig Brothers, the Paragould Grocer Company and D. D. Hodges as defendants. The cause of action was in that court based upon allegations that the plaintiff had delivered or caused to be delivered to the defendants the bale of cotton, and that it was sold or shipped by them, and that they had refused to pay therefor. The case was appealed to the circuit court, and in that court the complaint was amended, and in substance alleged that the cotton was delivered to Bertig Brothers, and that, by the negligence of all the defendants in failing to properly care for same, the cotton was lost. It was also alleged that defendants had converted the cotton to their own use and benefit. Upon the trial of the case in the circuit court, and after the introduction of all the testimony, the defendants "moved the court to require plaintiff to state whether he sued upon account, in bailment, or conversion. Thereupon plaintiff stated that the action was founded upon bailment."

It appears from the testimony that in April, 1907, the plaintiff hauled a lot of seed cotton to the Farmers' Gin Company, a business corporation located at Paragould, in order to have the same ginned and baled, which was done in a short time thereafter. The plaintiff resided in the county, some distance from the gin, and he claimed that he gave no directions

to the ginner as to the disposition of this bale of cotton at the time he delivered the seed cotton. After ginning the cotton, the Gin Company sent the bale by its driver to a public platform situated at or near the depot in that city. At this platform cotton was weighed by a number of mercantile companies located in said city who were engaged in buying and shipping cotton. Two of these mercantile companies—Bertig Brothers and the Joseph Mercantile Company—had weighers at this cotton platform who weighed and placed tags upon the bales with consecutive numbers thereon. The bale in question was by the Gin Company marked "J O N," and by its driver hauled to the public platform, where the weigher of Bertig Brothers was at work. This weigher weighed the cotton and placed thereon a tag of Bertig Brothers marked "B-2977," with no-tation thereon "to hold." The bookkeeper of Bertig Brothers was notified thereof, and he entered the bale on the cotton book of the company, with this number, the name of the plaintiff as owner, and the notation that it was not to be shipped. It appears that the plaintiff never saw Bertig Brothers relative to this cotton, and gave no direction to them to take possession or otherwise to control or have custody thereof. The driver of the Gin Company hauled the bale at the direction of the man-ager of the gin to the public platform and there unloaded it.

It appears that a number of bales owned by various mer-chants and others was upon this public platform, and that, according to the custom, when cotton which was not sold to any of these merchants was placed upon the platform, the weigher would weigh and tag the same for the convenience of the owner and also of these mercantile companies, so that said bale could be identified from the other bales upon the platform. The notation "to hold" was placed thereon to indicate that it was not owned by any of the mercantile companies and should not be shipped out. The number of the bale and the name of the owner was placed upon the cotton books of Bertig Brothers for convenience only. The notation was made on the books showing that it was not bought by Bertig Brothers, and that they had no interest therein; and if subsequently they did purchase it, the entry of the number of the bale would appear in consecutive order upon their books.

It appears that, about a week or so after he had delivered

the cotton to the Gin Company, the plaintiff made an arrangement with the Paragould Grocer Company to take the cotton from the gin and ship same, and, after its sale, to apply the proceeds upon certain indebtedness due by the plaintiff. The bale was hauled to the public platform without any knowledge or direction of plaintiff or of the Paragould Grocer Company. The bale remained on the platform for about two weeks, when some one whom the weigher did not personally know, but whom the testimony tended to prove was the shipping clerk of the Paragould Grocer Company, notified the weigher that the cotton belonged to it or was in the charge of that company, and thereupon the weigher notified Bertig Brothers' bookkeeper of this, and he directed the weigher to take the tag from the bale, which was immediately done. The bale was then left upon the public platform, just as it was when hauled there by the driver of the Gin Company. It remained on the platform about three weeks thereafter, when it disappeared.

There was some testimony tending to show that about this time an agent of the Paragould Grocer Company presented to the agent of the railroad company at that place a bill of lading for this bale of cotton for the purpose of shipping it. The depot agent testified that, before signing same, he went to the platform to check the bale, and, not finding it, did not issue the bill of lading therefor. No inquiry or investigation as to this bale seems to have been made by any one from this time until about one year later, when the plaintiff, seeking settlement therefor from the Paragould Grocer Company, learned that it had not shipped or sold it. During all this time the plaintiff understood that the Paragould Grocer Company had obtained the cotton under his direction, and had sold same for him.

The testimony on behalf of Bertig Brothers proved that the bale of cotton was not taken, shipped or sold by them. Upon the trial of the case, a verdict was returned in favor of the plaintiff and against Bertig Brothers only, and they alone have appealed from the judgment entered upon this verdict to his court.

It is urged by counsel for Bertig Brothers that the action as originally brought was one sounding in tort for the conversion of the property, and that the complaint could not be amended so as to base the action upon a bailment. But we are

of the opinion that the allegations of the complaint in the justice of the peace court, and as it was amended in the circuit court, were sufficient to make the action one of assumpsit. The action of assumpsit is one for the recovery of damages for the nonperformance of a simple contract. Such contract may be expressed or implied, and the action is based upon the breach thereof, and is therefore *ex contractu*. 2 Enc. Pl. & Prac. 988.

Giving to the pleading that liberal construction accorded by our practice, the complaint as originally filed alleged that the defendants had obtained and converted the bale of cotton, and were liable to plaintiff upon an implied promise to pay for the value thereof thus received by them. At the trial, the plaintiff, when required to elect or specifically name his cause of action, in effect based it upon the allegations that a contract of bailment existed between the parties, and that the defendants had breached that contract by negligently failing to care for the property intrusted to them. Under the allegations made in the complaint and under those made at the trial, the plaintiff founded his cause of action upon a contract of bailment and the breach thereof. In the former, upon the allegation that after the bailment the defendants had sold and converted the property and failed to account for its proceeds; in the latter, that after the bailment said defendants had negligently lost the property. Under both allegations, the suit was for damages for the breach of contract, and was founded in effect upon the same cause of action. Whether the breach of contract grew out of the failure to pay the proceeds of the bale upon an implied promise to do so by those who had obtained it, or out of the negligence of those who, as bailees, were intrusted with its care, the remedy was an action of assumpsit. *Ferrier* v. *Ward*, 9 Ark. 85; *Stanley* v. *Bracht*, 42 Ark. 210. The action instituted was therefore based, and recovery can only be had, upon a contract of bailment and the breach thereof by the defendants.

There was no testimony adduced upon the trial of this case proving or tending to prove that Bertig Brothers sold, shipped or converted this bale of cotton, or in any way received anything of value therefor. Their liability can therefore only be based upon the theory that an express or implied contract

of bailment existed between them and the plaintiff by which they had the possession, custody and control of the bale of cotton for him, and during the continuance of that relation the cotton was lost through their negligence.

A bailment has been differently defined by the different text writers, and also in the different opinions of the courts. By all, however, it has been recognized that there must be a contract expressly entered into or one arising by implication, growing out of the delivery of property to the party intrusted with its care to constitute this relation. Such delivery may be actual or constructive; but, in order to constitute the transaction a bailment, there must be a delivery to the bailee and also an actual acceptance thereof by him. There must be a full delivery of the property to the bailee, so as to exclude the possession of the owner and all other persons, and give to the bailee for the time being the sole custody thereof. In addition to this, the party who is sought to be charged as bailee must accept the property, because the relation is founded upon contract, and the duty and liability springing therefrom can not be thrust upon one without his knowledge or consent. The acceptance, however, may be proved either directly or by circumstances; but in either event the proof must show that the person to be held knows that he is bailee of the property, or has notice of his possession or custody thereof, before he can be charged with the duties and responsibilities growing out of this relation. Story on Bailments, § 2; Hale on Bailments, 13; Lawson on Bailments, 12; Van Zile on Bailments, § 3.

The relation of bailment may exist from the fact that the property has come into the possession of a person, even though accidentally or by mistake; but the responsibilities and duties growing therefrom can only exist and continue so long as the party to be charged has and knows, or has notice, that he has possession and custody thereof. Hale on Bailments, p. 14; Van Zile on Bailments, § 19.

The degree of care and diligence that must be given by the bailee to the property intrusted to his care depends upon the nature of the bailment; whether it is for the sole benefit of the bailor, or of the bailee, or whether the benefit is reciprocal. If the benefit arising from the bailment is reciprocal, then the law requires ordinary care and diligence on the part of the bailee

and makes him responsible only for ordinary neglect. Story on Bailments, § 23. And this is the extent of his duty and liability, even though he may be so interested in the property as to make him a bailee for hire. In such case, the bailee is liable only for negligence; and such negligence must be proved by the party seeking to make him responsible therefor. The mere loss of the property does not ordinarily fix a liability for the loss upon him, but it must be further shown that said loss arose by reason of his negligence.

In the case of *James* v. *Orrell*, 68 Ark. 284, involving an action against a bailee, the trial court instructed the jury that, "the loss of the cotton being admitted, the burden is upon the defendant to show that such loss was not caused by the negligence of him or his servants; and, unless you find by the preponderance of the evidence that the loss was not caused by such negligence, your verdict will be for the plaintiff." This instruction was held to be erroneous, and the court in that case quoted the following with approval from Story on Bailments (8th ed. § 410): "With certain exceptions, which will hereafter be taken notice of, as to innkeepers and common carriers, it would seem that the burden of proof of negligence is on the bailor, and proof merely of loss is not sufficient to put the bailee on his defense. * * * As negligence is the foundation of the action between bailor and bailee, the duty of proving such negligence is on the former, rather than that of disproving it on the latter." To the same effect see *Tombler* v. *Koelling*, 60 Ark. 62; *Union Compress Co.* v. *Nunnally*, 67 Ark. 284.

But it is urged by counsel for appellee that a bailee for hire must first explain the loss of the goods which came into his possession before it can be held that the bailor must prove that such loss arose from some act of negligence upon the part of the bailee. But this rule is only applied to those cases where the bailee has actual and exclusive possession of the property intrusted to his care. It is a rule which is founded upon necessity, and grows out of the fact that the bailee, having the exclusive possession of the property, has also the exclusive means of showing what became of it. The rule is founded upon the principle that the bailee, having peculiar if not the exclusive means of knowledge of the facts growing out of his exclusive possession and custody of the property, is best able to prove

them.  *Prince* v. *Alabama State Fair* (Ala.), 28 L. R. A. 716;
*Claflin* v. *Meyer*, 75 N. Y. 260.

This rule, however,. does not obtain where the bailee does
not have the exclusive possession of the property at the time of
its loss.    If the possession of the bailee is not actual and exclu-
sive, or if the owner has such charge or possession thereof that
he is equally able to show the facts, then it does not devolve
upon the bailee to account for its loss or to show in effect that
he was free from negligence.    *St. Louis, I. M. & S. Ry. Co.*
v. *Weakley*, .50 Ark. 397.

In the case at bar, the evidence does not show that the bale
of cotton was in the actual possession of Bertig Brothers, or
in their exclusive possession at the time of its loss.    It was
placed upon a public platform, without any agreement made
between plaintiff and Bertig Brothers that they should have
the charge thereof or should care therefor.    The tag of Bertig
Brothers was placed upon the bale by the weigher only for the
purpose of identifying it, and to keep it from being shipped with
the other cotton on the platform.    If by this act Bertig Brothers
had any kind of possession or custody of the bale, they shortly
afterwards, and long before the bale disappeared from the
platform, took this tag off from the bale, and thus relinquished
all such possession or custody of it.    They did not put the tag
on the bale by agreement with the plaintiff, and were therefore
under no obligation or duty by reason of that act to continue
their tag on it.    The bale, when placed upon the public plat-
form, was still presumptively in the constructive possession of
the true owner thereof, and especially is this true after the tag
was taken off the bale.    At that time the bale was on the plat-
form just as it had been hauled there by the driver of the gin
company, and so remained for several weeks thereafter.    The
defendants, Bertig Brothers, did not possess any peculiar
means of knowledge relative to this cotton, or as to where it
went, beyond that possessed by the owner thereof, or by the
defendant, the Paragould Grocer Company, or by any other
person who had cotton weighed on this public platform.    They
were under no obligation to plaintiff, either by contract, express
or implied, to put a tag on the bale or to keep it there after it
was placed .thereon.    When the bale disappeared, there was
no tag of Bertig Brothers thereon, and at that time they did not

have possession thereof other or further than the true owner had. Under these facts and circumstances, they were not required therefore to show how the loss of this bale of cotton occurred. If it can be said that they were, at the time of its disappearance, in the constructive possession of the bale, then under the circumstances of this case it devolved upon the plaintiff to prove by evidence that its loss occurred through their negligence.

The court instructed the jury relative to this question as follows: "7. You are instructed that if you find from the evidence that the cotton was in the possession of Bertig Brothers, within the meaning of the instructions hereinbefore given you, either with or without the directions of plaintiff, and if you further find that Bertig Brothers either took or retained possession of said cotton with the expectation of buying the cotton, and thereby making a profit, then Bertig Brothers would be bailees for hire within the meaning of the law, and it would be your duty to find for the plaintiff and against the defendants, Bertig Brothers, unless you further find that Bertig Brothers have explained the loss of the cotton."

We are of the opinion that the court erred by telling the jury in this instruction that it was the duty of Bertig Brothers to explain the loss of this cotton. Under the undisputed facts and circumstances adduced in evidence in this case, Bertig Brothers did not owe in any event any greater duty than that of ordinary care in regard to the bale of cotton, and were liable only in event it was lost by reason of their negligence; and the burden of proving such negligence was upon the plaintiff.

For the error in giving said instruction No. 7 the judgment is reversed, and this cause is remanded for a new trial.

KIRBY, J., dissents.