[No. 25089. Department Two. September 24, 1934.]

D. S. TOBIAS, *Respondent,* v. ELMER J. TOWLE, *Appellant.*[1]

*Philip Tworoger,* for appellant.
*Peyser & Bailey,* for respondent.

GERAGHTY, J.—This is an action for delinquent rent. Trial was had before the court without a jury. At the conclusion of plaintiff's case, defendants moved for a dismissal. The motion was granted as to defendant Klotz and overruled as to defendant Towle. No evidence having been submitted other than that offered by respondent, the court made findings and conclusions,

[1]Reported in 35 P. (2d) 1114.

based on which judgment was entered against defendant Towle. The latter has appealed.

The appellant has for a number of years been engaged in business as a manufacturers' agent, representing on the Pacific coast a number of eastern companies manufacturing suitcases, trunks and leather supplies. Operating as a sole trader under the name of E. J. Towle Co., appellant maintained his principal office at San Francisco, with a branch office in Los Angeles.

In 1929, an additional branch office was opened in Seattle, with defendant Klotz as manager. In February, 1930, respondent, owner of the Tobias building located in the eleven hundred block on First avenue and also on Post street in Seattle, entered into a lease, upon its face running to E. J. Towle Co., of certain space therein for three years, at a monthly rental of seventy-five dollars. The lease was signed by Klotz, as manager for appellant. In November, 1931, the rent was reduced from seventy-five dollars to fifty dollars per month, the transaction being evidenced by a new lease to run for the balance of the original term. This lease was likewise signed by Klotz, as manager for appellant.

According to the evidence upon the subject, appellant was informed of the lease and made no objection either as to its form or terms. Respondent did not know, nor was he ever advised until shortly before the commencement of this action, that Klotz' authority to execute the lease on behalf of appellant was in any way challenged by the latter. On the other hand, it appears that appellant's business letterheads and order blanks bore a heading listing his main office at San Francisco, with branch offices at Los Angeles and Seattle, the address of the latter office being given as 1110 Post street.

On the door of the Seattle office was appellant's trade name. Although there is no evidence that the inscription was made at the specific instance or direction of appellant, it does appear that appellant visited the Seattle office, and the inscription on the door was, of course, apparent to him, as it was to the general public. All orders taken by Klotz were forwarded to, and filled by, appellant at San Francisco through the various manufacturers whom he represented. No books were kept at the Seattle office, but all records, including the bookkeeping, were maintained and attended to at San Francisco. Remittances upon all orders were sent to the San Francisco office. Periodically, appellant would remit to Klotz the amount of his commissions. In short, the business at Seattle was conducted just as the business at San Francisco was, namely, as a part of the business of E. J. Towle Co.

Respondent's rent, however, was customarily paid by Klotz' personal check. Appellant makes much of this fact in his attempt to escape liability under the lease. But obviously, respondent, who had had his negotiations direct with Klotz, would not be expected to concern himself with the form of the rental remittances, so long as he was fully and promptly paid. While the manner of payment was a circumstance to be taken into consideration, it was not of itself conclusive of the ultimate question.

Respondent was paid the rent under the lease until December, 1932, when the premises were vacated without notice. This action is for the amount owing for the balance of the term. The court made a substantial deduction from the amount claimed, for the reason that respondent had resumed, and been in possession of, the premises during the latter part of the unexpired term.

The sole question raised by this appeal is whether

appellant is liable for the act of the defendant Klotz in executing the lease.

It may be conceded that, under the evidence, no express agency was shown. Considerable argument in the brief is devoted to the question whether Klotz' acts in reference to the execution of the lease were within the apparent scope of his authority as general agent for appellant. Although there is much in the record to support the conclusion that his authority in that respect was established, we pass that question for the reason that there is another ground upon which, in our opinion, the respondent must prevail.

■ We think that appellant is clearly estopped to deny the authority of Klotz to enter into the lease. Appellant's theory of the case is that Klotz was conducting the Seattle business under the name of E. J. Towle Co., pursuant to an agreement with Towle that Klotz was to receive two-thirds of the commissions on all orders, from which he personally was to pay all expenses, including rent. There was some evidence to that effect. However, if there was any such arrangement, it was secret between Klotz and appellant.

But regardless of the actual working arrangement between appellant and Klotz, the latter was held out to the general public, including respondent, as the general agent of appellant. The Seattle business was, in all respects, conducted under the trade name of appellant, with his full knowledge. He had not only constructive, but actual, notice of the fact that the business at Seattle was being conducted as a part of his general business. He also actually knew that Klotz had entered into the lease for and on his behalf. Knowing all this, he permitted the lease to continue as though he were the real lessee, accepting all the benefits accruing to himself by reason of an established and permanent place of business on respondent's

premises. Respondent, knowing nothing to the contrary, permitted a continued occupancy of his premises on the strength and security of appellant's name upon the lease.

Having failed to repudiate an unauthorized transaction, if in fact it was unauthorized, appellant must be held to have affirmed it. Restatement of the Law of Agency, vol. 1, p. 234. Having placed an agent in such a situation as justified a person of ordinary prudence, under the attendant circumstances, in assuming that the agent had authority to perform a particular act, which later was specifically called to his attention, appellant is estopped to deny that the agent had actual authority. *Harris v. Northwest Motor Co.,* 116 Wash. 412, 199 Pac. 992; 21 R. C. L. 856; 2 C. J. 570. Having entrusted the agent with what, on its face, appeared to be general authority, appellant may not accept the benefits of the agent's contract without also incurring its obligations. *Short v. Dolling,* 178 Wash. 467, 35 P. (2d) 82.

The judgment is affirmed.

HOLCOMB and TOLMAN, JJ., concur.

BEALS, C. J., concurs in the result.

BLAKE, J. (dissenting)—I dissent. The majority opinion puts upon the principal the burden of proving that his agent does not have authority to perform the act for which it is sought to hold the principal. This is quite the reverse of the rule long adhered to by this court, and so tersely stated in *Bowles Co. v. Clark,* 59 Wash. 336, 109 Pac. 812, 31 L. R. A. (N. S.) 613:

"A person dealing with an agent must not act negligently, but must use reasonable diligence to ascertain whether the agent acts within the scope of his powers. He is not authorized under any circumstances to

blindly trust the agent's statements as to the extent of his powers . . . ''

Furthermore, estates in real property have come to hang by a slender thread when courts hold that they may be created through implied authority of an agent. Such was not the rule at common law. A lease executed by an agent could bind the principal only when the agent had authority under seal to execute it. Story on Agency (9th ed.), §§ 48, 49. After stating the general rule to be that an agent may be appointed by parol, the author says:

''§ 48. There are a few exceptions to the rule, proper to be considered, which seem, however, to have their true foundation in the strict principles and solemnities, required by the common law in regard to the transfer of real estate, and to the creation of formal obligations and covenants under seal, rather than in any enlarged public policy, applicable to the business and concerns of modern society.

''§ 49. One exception is, that, whenever any act of agency is required to be done in the name of the principal under seal, the authority to do the act must generally be conferred by an instrument under seal. Thus, for example, if the principal should authorize an agent to make a deed in his name, he must confer the authority on the agent by a deed. A mere unsealed writing will not be sufficient to make the execution of the deed by the agent valid at law; although a court of equity might, in such a case, compel the principal to confirm and give validity to the deed. The ground of this doctrine seems to be, that the power to execute an instrument under seal should be evidenced by an instrument of equal solemnity.''

And the modern rule is that, where the term demised must be in writing, the authority of the agent must also be in writing. 1 Mechem on Agency (2d ed.), § 830; *Kiersted v. Orange etc. R. R. Co.*, 69 N. Y. 343, 25 Am. Rep. 199. Under Rem. Rev. Stat., § 10618 [P.

C. § 3553], leases for more than one year must be acknowledged. It seems to me to necessarily follow, under the rule stated by Story and Mechem, that the agent's authority must also be in writing.

I do not see any fact stated in the opinion upon which appellant can be held on the theory of estoppel. He neither did nor said anything which induced respondent to enter into the lease. It is said appellant knew of the existence of the lease. That, in itself, is not sufficient to bind him. Mere knowledge of the agent's unauthorized act does not constitute ratification. 1 Mechem on Agency (2d ed.), § 453. "Silence simply in itself is ordinarily no evidence of anything . . . ." *Iron City Nat. Bank v. Fifth Nat. Bank,* 47 S. W. (Tex. Civ. App.) 533.

### On Rehearing.

[*En Banc.* February 20, 1935.]

Per Curiam.—Upon a rehearing *En Banc,* a majority of the court adheres to the Departmental opinion heretofore filed herein.