[No. 30407.   Department One.   March 5, 1948.]

C. F. MOE, *Appellant*, v. AMERICAN ICE & COLD STORAGE COMPANY, *Respondent.*[1]

[1]Reported in 190 P. (2d) 755.

*Cooper & Cooper* and *Geo. A. Meagher,* for appellant.

*O. D. Anderson* and *J. P. Hunter,* for respondent.

SIMPSON, J.—Plaintiff instituted this action against defendant to recover the market value of certain fish deposited with defendant in storage, for which it issued negotiable warehouse receipts, and for which it failed to account when plaintiff made a demand for delivery. Defendant filed an answer, which contained a general denial of the facts set out in the complaint, and then for answer and cross-complaint, admitted that certain warehouse receipts were delivered to plaintiff. Further, that there was a balance due defendant for storage charges, to and including December 31, 1946. The cause tried to a jury resulted in a verdict for defendant, but without the assessment of storage charges.

Plaintiff then presented a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial. The motion was denied, and plaintiff appealed to this court.

Appellant contends that the trial court committed error in the following particulars:

"(1) In permitting evidence of a parol agreement tending to modify certain negotiable warehouse receipts.

"(2) In submitting to the jury instructions No. 3, No. 6, No. 7 and No. 8.

"(3) In refusing to submit to the jury Appellant's requested instructions No. 15, No. 19, No. 20 and No. 22.

"(4) In refusing to permit Appellant to testify as to the authority of his manager in the conduct of Appellant's business.

"(5) In refusing to grant to Appellant his motion for judgment notwithstanding the verdict.

"(6) In refusing to grant to Appellant his motion for a new trial.

"(7) In entering judgment on the verdict."

The statement of facts contains several hundred pages, a great portion of which is of little evidentiary value. For the sake of brevity, we will therefore refer only to that portion of the record which, in our opinion, has a direct bearing on the issues involved.

Appellant, C. F. Moe, was engaged in the business of marketing fresh and frozen fish at wholesale and retail. In Seattle, he carried on his business under the assumed name of Superior Fish Company, and in Everett he operated under the trade name of Everett Fish Company. From June, 1944, to the time of the trial, Fred Moe, son of appellant, was manager of the Everett Fish Company.

Respondent corporation operated a cold storage warehouse in the city of Everett, and as such, stored within its warehouse large quantities of fish, and issued negotiable warehouse receipts therefor. During the time involved in the present controversy, respondent's business was managed by M. A. Lewis, who was subsequently replaced by Arthur Soley.

The evidence showed that between October 4, 1945, and November 9; 1945, appellant received from respondent

seven negotiable warehouse receipts for 128,045 pounds of fish. Twenty-three thousand three hundred and forty-five pounds of fish were halibut. The balance was salmon. The warehouse receipts were in the usual form and complied with the provisions of chapter 99, p. 279, Laws of 1913 (Rem. Rev. Stat., §§ 3587, 3588, 3589 [P.P.C. §§ 992-1, -3, -5]).

The evidence produced by respondent may be summarized as follows: Respondent's cold storage plant and warehouse is located on the Everett waterfront about one-half mile from appellant's fish-buying station. The fish that were brought to the cold storage plant were unloaded onto carts or wagons, weighed, and placed in the sharp-freeze room, where they were glazed. This term means that before the fish are placed upon the racks in the sharp-freeze room they are first dipped in a water solution. From that room the fish were taken to a larger room, where they were stacked like cordwood for permanent storage.

Prior to the 1944-1945 season, respondent maintained complete charge of its cold storage and warehouse plant. At the beginning of the 1944 season, the war labor shortage brought about an arrangement by which appellant would care for his own fish by way of weighing, glazing, sharp-freezing, placing into, and withdrawing it from storage. It was further agreed that appellant would furnish respondent with platform weighing receipts, known as "in-slips," and that appellant would sign platform receipts known as "out-slips," showing weights of fish taken from the cold storage plant. It was agreed that the in-slips were to be delivered to respondent's bookkeeper by appellant. The entire record of respondent company relating to fish was secured from the in-slips and out-slips.

The record in this case shows that all of appellant's employees, and many others, had access to the storage room. The arrangement continued until it became necessary for appellant to borrow money to finance his business. In order to aid appellant to carry on his business, respondent issued the warehouse receipts mentioned in appellant's com-

plaint and in his evidence. The receipts represented fish that had been in cold storage for some time.

Fred Moe first reported shortages to his father in the latter part of January, 1946. He testified, however, that he had no means of knowing how many fish were missing until all the fish were checked out of cold storage.

Facts gleaned from the evidence of several witnesses, one of whom was Fred Moe, showed that keys to the storage room could be had by anyone at any time. One witness, who had been employed by appellant, testified that he was in the storage room every other day and did not miss any large quantities of fish. One witness, who worked for appellant for approximately eleven months during the years of 1945 and 1946, testified that no weighing whatever was done at the American Ice & Cold Storage Company's place of business. That all the fish were taken care of by the Everett Fish Company and its employees. Asked who was authorized to withdraw fish, he stated, "Anybody from the Everett Fish Company was authorized—anybody that worked at the Everett Fish Company."

He further testified that no one representing the American Ice & Cold Storage Company was around when fish were withdrawn from storage. Asked if there was any evidence of their supervising the removal of the fish, he said: "No, outside of the fact that they had their office near there. But as far as the weighing of the fish, we weighed all of our own fish out." He estimated that he had withdrawn fish for kippering as many as seventy times, and removed from one thousand to fifteen hundred pounds a trip, and that on only fourteen occasions did he sign out-slips. He said that he removed the balance of the fish without signing anything at all. The witness was of the opinion that the Everett Fish Company got out of storage all the fish that they put into it.

The records of appellant and respondent disclose that there were four or five in-slips which appellant had in his records which were not in the records of respondent. There were approximately one hundred in-slips with respondent which were not contained in the records of appellant. The

evidence just related was, if admissible, sufficient to justify the jury in believing that the business conducted by appellant and respondent was not strictly that of the ordinary warehouseman and customer, but rather that of two companies agreeing to co-operate in order to conduct going concerns during the war period.

Appellant takes the position, first, that he made out a *prima facie* case when he proved the deposit of the fish in storage, his ownership of negotiable receipts, and failure of respondent to produce the fish on demand. Included in this argument is the contention that the court committed error in permitting evidence as to a parol agreement tending to modify the terms and provisions of the negotiable warehouse receipts; second, that respondent committed an unlawful act in allowing appellant control of the fish covered by the negotiable receipts, and further, in permitting withdrawal of the fish without the surrender of the receipts.

█ We agree that appellant presented, in the first instance, a *prima facie* case. *McDonald v. Perkins & Co.*, 133 Wash. 622, 234 Pac. 456, 40 A. L. R. 859; *Goodwin v. Georgian Hotel Ço.*, 197 Wash. 173, 84 P. (2d) 681, 119 A. L. R. 788.

█ The statutes under consideration are not ironbound—that is to say, their terms and provisions are not so explicit as to prohibit waivers or estoppels under certain conditions. Rem. Rev. Stat., § 3607 [P.P.C. § 992-67], provides:

"A warehouseman shall be liable for any loss or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise, but he shall not be liable, in the absence of an agreement to the contrary, for any loss or injury to the goods which could not have been avoided by the exercise of such care."

This section, defining the liability of the warehouseman and the original depositor, does no more than state the common-law rule of liability between bailor and bailee.

█ Was the evidence relating to the agreement concerning the handling of the fish admissible? We are of the

opinion that it was. The oral agreement was made a long time prior to the making and delivery of the negotiable receipts. During the period of time between the making of the oral agreement and the execution of the receipts, a great portion of the fish had been delivered to the cold storage warehouse. During that period of time, appellant and respondent worked in accordance with the oral contract. Fish were weighed at appellant's place of business. Appellant glazed and sharp-froze the fish. He placed them in the storage room and took a goodly portion of them from the warehouse. The same method of doing business continued after the receipts were in the hands of appellant. Under the conditions just mentioned, the parol evidence rule as contended for by appellant does not apply. *Dalton Adding Mach. Sales Co. v. Lindquist*, 137 Wash. 375, 242 Pac. 643; *Blaine v. Darwin*, 160 Wash. 327, 295 Pac. 131.

█ The next claim by appellant is that Rem. Rev. Stat., § 3640 [P.P.C. § 992-37], is a penal law, obligating the warehouseman not to deliver the goods in storage, covered by a negotiable receipt, without obtaining the possession of the receipt at or before the time of delivery. It is true that the section is penal in nature. However, appellant was a party to the agreement relative to the manner of handling the fish, including their disposal, and cannot take advantage of his own wrong, if there was a wrong.

██ In instruction No. 3, the court explained to the jury that the burden was first upon appellant to show that he held uncanceled, negotiable warehouse receipts, and that there was an undelivered balance of fish shown by the receipts which respondent failed to deliver on demand. That the burden was then on respondent to prove a lawful excuse for failure to deliver. The instruction then continued:

"However, if you find from the evidence that the defendant did not have exclusive possession of the fish at the time of their loss and that the Everett Fish Company either by agreement or otherwise had access to the storage room where the fish were stored and had custody or charge of the fish at the time of their loss with respect to placing the fish in storage, caring for the fish while in storage and withdrawing the fish from storage, then it does not devolve

upon the defendant to account for the loss of the fish or to show that it was free from fault or negligence. If the evidence shows that the method and circumstances of the storage were such that there is as much reason to believe that the plaintiff, Everett Fish Company, had as much knowledge concerning the whereabouts of the fish as the defendant, then the defendant does not have the burden of establishing that it was free from fault in the loss of the fish. Under the circumstances just mentioned, the burden remains upon the plaintiff to establish that the failure of the defendant to deliver the fish was caused by the failure of the defendant to exercise such care in regard to them as a reasonably careful owner of similar goods would exercise under all the circumstances."

It is appellant's contention that the burden never shifts from the shoulders of the bailee, in cases in which the bailor has in his possession uncanceled warehouse receipts. He predicates his argument upon the holding of this court in the *McDonald* and *Goodwin* cases, *supra*. There is some showing in the *McDonald* case that the bailee did not have the exclusive possession of the property belonging to the bailor. However, it is clear that this court founded its legal determination upon the proposition that the bailee did have exclusive possession, because the opinion states, in speaking of the rule relative to property in the possession of the bailee:

"The rule has its foundation in necessity; a bailee, having exclusive possession of property, has also the exclusive means of knowing what becomes of it."

In the *Goodwin* case, action was brought against the hotel company by one of its guests to recover the amount of the cash deposit left with the hotel for safekeeping. The evidence showed in the first instance that the hotel had exclusive possession of the property given to it by the guest. There was evidence on the part of the hotel company that the bailor (the guest) had surreptitiously removed the check left by the bailor from the possession of the hotel. In announcing the law, this court said that ordinarily when a bailor proves that he deposited property with a bailee, and that the bailee failed to return the property on demand, the

burden is on the bailee to show that loss is not due to his negligence. Then the court continued:

"There is a corollary to this rule, however, namely, that, when the bailee has shown that such loss resulted from burglary, larceny, fire, *or from some other cause which, of itself, does not point to negligence on the part of the bailee,* the *prima facie* case against the bailee has been met, and the burden of proof then rests on the bailor, as in any other case of alleged negligence."

As we view these cases, they do not have the effect contended for by appellant, but rather, the two cases recognize the well-established rule that in the first instance the bailee has the burden of proof, but when it is shown that the bailee did not have exclusive possession of the property, then the rule provides for a change of the burden of proof back to the bailor.

In this case, the evidence shows beyond question that the bailee did not have exclusive possession of the property, but that the possession was joint with the bailee and the bailor. As a matter of fact, the possession was almost exclusively that of the bailor. The rule which must be applied in cases in which the bailee has not had exclusive possession, is well stated as follows in 8 C. J. S. 347, Bailments, § 50:

"If the possession of the bailee has not been exclusive of that of the bailor the rule above stated does not apply, and the rule is also inapplicable where the loss occurred while the property was in the possession of a third person to whom the bailee had delivered it with the bailor's consent."

The same thought is expressed in 6 Am. Jur. 461, Bailments, § 381:

"Where the bailee's negligence is in issue, and at the time of the loss or injury he did not have exclusive possession of the thing bailed, and the bailor is equally able to explain the circumstances, the reason for imposing any burden on the bailee to show his due care disappears, and there is authority to the effect that in such a case the bailor has the burden throughout the trial to establish negligence by proof."

This court held in *Boe v. Hodgson Graham Co.*, 103 Wash. 669, 175 Pac. 310, that the owner of a boat could not recover from a charterer for loss of the boat where it was negligently loaded beyond its capacity by a master furnished by the owner. During the trial, and in this court, the owner of the boat contended that the charterer was a bailee, and in sole charge of the boat at the time of loss, and that therefore the burden of proof was upon the bailee to show that the boat was not lost through its negligence. In passing upon the question thus presented, Judge Tolman, speaking for this court, said:

"The possession of respondent not being exclusive, the rule as to the burden of proof, for which the appellant contends, does not apply. 6 C. J. 1158; *Bertig v. Norman*, 101 Ark. 75, 141 S. W. 201, Ann. Cas. 1913D 943; *North Atlantic Dredging Co. v. McAllister Steamboat Co.*, 202 Fed. 181."

The supreme court of Oregon in *Hansen v. Oregon-Wash. R. & N. Co.*, 97 Ore. 190, 188 Pac. 963, 191 Pac. 655, recognized the rule that, where the bailee is not in exclusive possession, the burden of accounting for the bailed property is upon the bailor. The court said, "The rule now under discussion does not apply if the possession of the bailee has not been exclusive of that of the bailor." As authority, the Oregon court cited our case of *Boe v. Hodgson Graham Co.*, *supra.*

The supreme court of Arkansas in *Bertig v. Norman*, 101 Ark. 75, 141 S. W. 201, acknowledged the rule that ordinarily a bailee must show that undelivered goods were not lost through his negligence. Speaking of this rule the court then stated:

"This rule, however, does not obtain where the bailee does not have the exclusive possession of the property at the time of its loss. If the possession of the bailee is not actual and exclusive, or if the owner has such charge or possession thereof that he is equally able to show the facts, then it does not devolve upon the bailee to account for its loss or to show in effect that he was free from negligence."

The rule, and the reasons for the rule which we have under consideration, is best stated by the court in *Lemnos*

*Broad Silk Works, Inc. v. Spiegelberg,* 127 Misc. 855, 217 N. Y. Supp. 595, in the following language:

"A bailee, unlike an insurer, is liable only in the event of fault, neglect, or both. The burden of proof is always upon the bailor to establish one or the other of these classes of delinquency on the part of the bailee. Because of the manifest difficulty of proof in so many of these cases the law has come to be well recognized that in those instances of bailments, where the bailee has the sole, actual, undivided and exclusive physical possession of the goods, the bailee is legally presumed to be negligent if, upon the disappearance of the goods, he cannot explain their loss. This rule is based, like most rules of the common law, upon nothing more or less than common sense. It is a rule which is founded upon necessity. In other words, the common law, with its characteristic horse-sense, makes a virtue out of necessity growing out of the fact that, where the bailee has the exclusive and undivided possession of the goods, he must also have the exclusive means of showing what became of them. Where the reason of the law ceases, the law ceases. For reasons which must be perfectly manifest to any thinking person, the rule referred to does not obtain or apply where the bailee does *not* have the exclusive and undivided possession of the property. [Citing cases.] Where the possession of the bailee is not actual and exclusive and if, as in the instant case, the owner, through the owner's selling agents, has custody or charge of the goods in whole or in part, in such event it does not legally devolve upon the bailee to account for their loss or to show freedom from fault or negligence. This corollary of the rule applies to the case at bar, where the possession and custody of defendants, as above pointed out, were not exclusive."

Instructions Nos. 7 and 8 were given in conformity to the rules which we have adopted in this case. We find no error contained in those instructions.

The proposed instructions embodied the rules of law for which appellant has contended. Under the law as we have found it to be, we must hold that the court was justified in refusing to give those instructions.

Appellant finally contends that the court committed error in refusing to allow appellant to testify as to the authority of his agent, Fred Moe. The court, passing upon the question, properly considered the evidence of many wit-

nesses, including that of the appellant and his son, who had throughout the trial testified to the fact that Fred Moe was the manager of the Everett business and that the appellant had at all times held out to the world the fact that Fred Moe was the general manager of the Everett concern. The court ruled correctly. *Tobias v. Towle,* 179 Wash. 101, 35 P. (2d) 1114.

Finding no error in the record, we affirm the judgment.

MALLERY, C. J., MILLARD, SCHWELLENBACH, and HILL, JJ., concur.

[1]Reported in 190 P. (2d) 747.