HALL *v.* STOVER.

4-8853                                              221 S. W. 2d 41

Opinion delivered June 13, 1949.

Rehearing denied July 4, 1949.

*Campbell & Campbell,* for appellant.

*Curtis L. Ridgway* and *Earl J. Lane,* for appellee.

ED. F. McFADDIN, Justice. This is an action brought by the owner to recover damages alleged to have been caused to his airplane by the negligence of the bailee.

Stover (plaintiff below and appellee here) was engaged in renting airplanes to licensed pilots. Hall (defendant below and appellant here) was a licensed pilot, and rented an airplane from Stover and flew it for about an hour, and damaged the plane in landing it. Stover claimed that Hall was negligent in landing the plane, in that he landed (1) cross wind, (2) cross traffic and (3) in a forward slip. Hall claimed that he was an experienced pilot, and that the damage to the plane was through no fault of his. The case was tried to a jury, and resulted in a verdict for $750 in favor of Stover. Hall has appealed, and urges here the two points now to be discussed.

I. *Sufficiency of the Evidence as to Hall's Negligence.* The parties concede that Hall was a bailee for hire, and that the rights and liabilities of the parties are to be determined by the ordinary rules in such bailment cases.[1] Thus, the burden was on Stover to prove that Hall's negligence was the cause of the damage to the plane.[2]

There was sufficient competent evidence from which the jury could have found—and its verdict reflects that it did find—that the airplane was duly inspected and tested before the trial flight; that Stover had an experienced pilot take Hall on a trial flight; that Hall, having owned and operated a similar airplane, accepted the rented plane as in good condition; that Hall flew for nearly an hour; and that the damage to the plane occurred through Hall's negligence in landing it. On the issue of Hall's negligence, the testimony was directed (a) as to how Hall landed the plane; and (b) as to whether such landing was negligence. We discuss some of this testimony.

[1] In 6 Am. Juris. 25, in discussing bailment of aircraft, this appears: "The general rules of bailment apply to aircraft."

[2] James v. Orrell, 68 Ark. 284, 57 S. W. 931, 82 A. S. R. 293; Bertig v. Norman, 101 Ark. 75, 141 S. W. 201, Ann. Cas. 1913D, 943; Scott v. Columbia Compress Co., 157 Ark. 521, 249 S. W. 13.

(a) On the first point, William Benson testified that he was flying over the field and observed Hall's landing. Using a small plane to demonstrate before the jury, Benson testified of Hall's landing:

"Q. Assuming this is the runway which he was coming in on, explain and show to the jury what you mean by him going into a slip, and how he landed. A. He slipped to the right and the plane was in this position, and he came in and struck the ground this way, which would make it do that. He was coming in a slip instead of straight ahead. He slipped the plane, and kept it in that position until he hit the ground. Q. Then what happened? A. He bounced then on the ground until it came to a stand-still, and turned after it stopped—not after it stopped: that was the way it finally came to a standstill. Q. Were you flying above him at this time when you were observing him A. Yes. I was six hundred feet high in the traffic pattern.. Q. About six hundred feet high? A. Yes. Q. Did he land in the proper runway: that is, the line where the lane of traffic was going? A. No, he was landing on the cross-runway. Q. From what direction was the wind coming at that time? A. Approximately northwest. Q. Then the landing should have been in the southeast-northwest runway? A. That is right. Q. And what runway did he land on? A. He landed northeast. Q. Northeast-southwest? A. Yes. Headed northeast."

Again, Benson testified:

"Q. Can you tell the jury just what happened when he approached this northeast-southwest runway? A. It looked like he was too high to make the landing, so as he approached the field he put the plane in a slip—that kills your speed and you lose altitude—to bring him down closer to the field so he would be able to land down on this strip. Q. Did he ever straighten the plane out of the slip before his wheels touched the runway? A. Not that I could tell at all. It looked as though the plane remained in the slip until it touched the ground. Q. I believe you stated the plane kept bumping sideways. Yes. Q. Did you observe that? A. Yes, it bounced along

on the runway, or along on the ground, until it came to a stop.''

(b) On the second point—i. e., as to whether such landing was negligence—Paul Angell, who qualified as an expert, testified:

''Q. Now, Mr. Angell, you heard the testimony of Mr. Benson as to how the defendant landed the plane on that particular day, did you not? A. Yes.

. . . . . . . . . .

Q. I will ask you, also, would a prudent pilot, who has had experience in flying and who is licensed to fly a plane, in taking off and landing, continue to land his plane on into the runway in a forward slip?

. . . . . . . . . .

A. The answer to that will be, definitely no. Q. What would happen if he continued on into the runway? A. He would hit the runway in a side motion. His wheels would be pointed in one direction, his flight path would be in another direction, and would cause what is commonly known as a ground loop, unless otherwise checked.''

Hall insisted that the witness Benson could not possibly have seen the occurrences as to which he testified. That, of course, was a matter for the jury to decide in passing on Benson's credibility. Hall also insisted that even though the witness Angell qualified as an expert, nevertheless, he should not have been permitted to testify as he did. But whether the described operations were ordinarily prudent was a question for the jury; and the Court—without objection—instructed the jury: ''You are instructed that negligence is the doing of something that a man of ordinary prudence would not do under the same or similar circumstances, or the failure to do something that a man of ordinary prudence would have done under the same or similar circumstances.''

It would unduly prolong this opinion to summarize the testimony of all the witnesses, and to explain the terminology used by them. The fact remains that there

was sufficient competent evidence to take the case to the jury on the issue of Hall's negligence, and under our judicial system—in a case such as this—it is for the jury to determine the factual questions.

II. *Instructions.* The trial Court gave six instructions on its own motion, and four others on motion of the defendant; but refused to give eight other instructions requested by the defendant. The appellant has set out in his abstract the complete and exact wording of only one instruction that was given, i. e., the Court's instruction No. 3. All other given instructions are merely summarized. The instruction No. 3 is not inherently erroneous.

On page 146 of C. R. Stevenson's 1948 revision of Arkansas Supreme Court Procedure, the following appears as a fair summary of our holdings on the matter of setting out the instructions in the abstract:

"All instructions must be set out in the abstract and when not set out, errors will not be considered unless the instructions are so inherently defective that they could not be cured by others. Morris v. Raymond, 132 Ark. 449, 201 S. W. 116; Harrelson v. Eureka Springs Elec. Co., 121 Ark. 269, 181 S. W. 922; Barnett Bros. v. Western Assurance Co., 126 Ark. 562, 191 S. W. 226; Forrest City Box Co. v. Latham, 144 Ark. 451, 222 S. W. 706; Crosby v. Lucas, 180 Ark. 277, 20 S. W. 2d 861; Commercial Credit Co. v. Childs, 199 Ark. 1073, 137 S. W. 2d 260, 128 A. L. R. 726; Peoples Loan & Inv. Co., v. Whittle, 205 Ark. 35, 166 S. W. 2d 390; Baker v. Boone, 206 Ark. 823, 177 S. W. 2d 756; Sloan v. Ayres, 209 Ark. 119, 189 S. W. 2d 653.

"Error of the court in refusing an instruction asked will not be considered where appellant's abstract fails to set out the other instructions given by the court. St. L. I. M. & S. R. Co. v. Boyles, 78 Ark. 374, 95 S. W. 783; Keller v. Sawyer, 104 Ark. 375, 149 S. W. 334; DeQueen & East. Ry. Co. v. Thornton, 98 Ark. 61, 135 S. W. 822; Met. Life Ins. Co. v. Shane, 98 Ark. 132, 135 S. W. 836."

Since the only given instruction set out in the abstract (that is, court's instruction No. 3) is not inherently

erroneous, and since all the other instructions as given are not set out in the abstract, we must consider that the appellant has waived his argument as to the instructions.

Affirmed.