LEMNOS BROAD SILK WORKS, INC., Plaintiff, *v.* SPIEGELBERG and Another, Defendants.

Supreme Court, New York County, August 9, 1926.

**Bailment** — action for accounting and to recover value of goods consigned to defendants as collateral — defendants not charged with selling are not factors but commercial bankers — plaintiff's selling agents had access to goods — no proof of fault or negligence on part of defendants in loss of goods — recovery cannot be had — plaintiff's remedy is at law and not in equity — interest — agreement to charge interest monthly amounts to agreement for compound interest and is invalid.

The plaintiff is not entitled to recover the value of goods consigned to the defendants as collateral security, which were lost or disappeared while in the defendants' place of business, since it appears that while the defendants called

themselves factors they were merely commercial bankers loaning the plaintiff money on the security of the goods and guaranteeing the accounts of purchasers secured by plaintiff's selling agents, that plaintiff's selling agents had access to the goods and that plaintiff did not prove that the goods disappeared through the fault or negligence of the defendants; presumption of negligence against a bailee for the loss of goods arises only where the bailee has exclusive possession. Furthermore, plaintiff's remedy, if any, is by an action at law and not in equity for an accounting.

That part of defendants' contract providing for the charging of interest on each monthly statement and commencing the next month's statement with the amount so obtained, is illegal as an agreement in advance for compound interest.

ACTION for the value of goods consigned by the plaintiff to the defendants as collateral security for an indebtedness.

*Alvin C. Cass*, for the plaintiff.

*Guggenheimer, Strasser & Meyer*, for the defendants.

VALENTE, J. In this case, which was tried before me without a jury, the principal question at issue is whether defendants are liable for some thirty-six pieces of silk consigned by plaintiff to defendants as collateral security for an indebtedness, and which subsequently disappeared in a manner both unaccountable and unaccounted for. It should be perhaps noted at the outset that plaintiff charges no fraud or bad faith against defendants. It does not claim, nor has it proven, any conversion or the gleaning of any benefit by defendants. It predicates its case upon the theory that since the goods were intrusted to defendants' care, as bailee, they must respond for their value. While there is little real conflict in the facts, yet wherever the testimony is conflicting I have adopted defendants' version, as their testimony seemed entirely credible and convincing. The chief point urged by defendants in answer to plaintiff's above-mentioned contention is that plaintiff, through a concern known as Scheff & Kraus, who acted as selling agents for plaintiff, retained an access to and a custody over the goods, and possessed a knowledge of their whereabouts and of their disposition at least equal to that of defendants, and that accordingly the mere disappearance of the goods does not cast upon defendants the burden of explaining their disappearance at the risk of legal responsibility, but, in the light of all the facts, defendants cannot be held liable by this plaintiff without affirmative proof that the loss of the merchandise was due to the fault or negligence, or both, of the defendants. The facts are comparatively simple, though they are indeed obscured in the lengthy and repetitious briefs submitted by respective counsel. They permit of very brief statement. The plaintiff is a New Jersey corporation engaged in the manufacture of silk. The defendants are copartners,

doing business as so-called factors in New York city. Between May 1, 1922, and June 21, 1923, plaintiff delivered to defendants silks worth, it is claimed, upwards of $250,000, which silks defendants promised in turn to deliver over to such customers of plaintiff as the same might be sold to, rendering plaintiff the proceeds less the commissions, interest, charges and disbursements of the defendants for their services. As has been said, plaintiff's claim is that some of this merchandise has not been accounted for, and it is claimed that the value of this merchandise must be deducted from the cash balance admittedly due by plaintiff to defendants. The defendants in the contract see fit to style themselves " factors and commission merchants." In the juridical sense they were not factors, no more than Edmund Wright-Ginsberg Company were factors in the recently decided case of *Shoyer* v. *Wright-Ginsberg Co.* (240 N. Y. 223), referred to by both counsel in their briefs with incorrect citation. (See 240 N. Y. 226, opinion of HISCOCK, Ch. J., at 232.) The habit of persons who are really commercial bankers or financial agents of styling themselves as " factors " seems very common. In the common-law sense of the term a " factor " is an agent to whom merchandise is intrusted for the purposes of sale. If he also guarantees the purchaser's credit he is a *del credere* factor. In this case the defendants were in no sense factors. They were simply financial agents in the nature of commercial bankers. (See *Shoyer* v. *Wright-Ginsberg Co., supra.*) They did not sell plaintiff's merchandise. Scheff & Kraus, plaintiff's selling agents, did that. Scheff & Kraus had space for this purpose in defendants' loft. The defendants from time to time would advance money to plaintiff on plaintiff's merchandise and guarantee the accounts. Scheff & Kraus were the actual factors so far as selling is concerned. The defendants were really nothing more or less than bankers. Scheff & Kraus made the sales. Defendants made advances and guaranteed the purchasers' credit. For the advances made by them defendants were granted a lien on plaintiff's goods, which involved at least legal or constructive possession thereof. In order to sell the goods Scheff & Kraus, as selling agents, required access to them. That they had actual physical custody thereof the record leaves no doubt. Without this they could not have performed the functions as selling agents which concededly they agreed to undertake and which admittedly they undertook and performed. It is most significant in this connection that plaintiff called no member of this firm of Scheff & Kraus, nor any of their employees, to contradict the testimony of defendants. The fact that plaintiff elected not to put any representative of Scheff & Kraus on the witness stand would seem to indicate that defendants' evidence

did not permit successful contradiction, to which the fact that plaintiff makes no claim that defendants themselves converted the goods or derived any benefit from their disappearance, adds still further force. The case was tried before me on the theory of bailment; that plaintiff was bailor and that defendants were bailees. The responsibility of a bailee, upon elementary principles, is for negligence. A bailee is not an insurer. A bailee, unlike an insurer, is liable only in the event of fault, neglect, or both. The burden of proof is always upon the bailor to establish one or the other of these classes of delinquency on the part of the bailee. Because of the manifest difficulty of proof in so many of these cases the law has come to be well recognized that in those instances of bailments, where the bailee has the sole, actual, undivided and exclusive physical possession of the goods, the bailee is legally presumed to be negligent if, upon the disappearance of the goods, he cannot explain their loss. This rule is based, like most rules of the common law, upon nothing more or less than common sense. It is a rule which is founded upon necessity. In other words, the common law, with its characteristic horse-sense, makes a virtue out of necessity growing out of the fact that, where the bailee has the exclusive and undivided possession of the goods, he must also have the exclusive means of showing what became of them. Where the reason of the law ceases, the law ceases. For reasons which must be perfectly manifest to any thinking person, the rule referred to does not obtain or apply where the bailee does *not* have the exclusive and undivided possession of the property. (*Wall* v. *Gillin Printing Co.*, 21 Misc. 648, 652; *Bertig* v. *Norman*, 101 Ark. 75, 82, 83; *Winn* v. *American Express Co.*, 149 Ia. 259; Schouler Bail. & Car. [3d ed.] 28; 6 C. J. 1158, 1159; 31 Cyc. 838.) Where the possession of the bailee is not actual and exclusive and if, as in the instant case, the owner, through the owner's selling agents, has custody or charge of the goods in whole or in part, in such event it does not legally devolve upon the bailee to account for their loss or to show freedom from fault or negligence. This corollary of the rule applies to the case at bar, where the possession and custody of defendants, as above pointed out, were not exclusive. As said by the Appellate Term of this court in *Wall* v. *Gillin* (*supra*): "The rule invoked by appellant, which requires the bailee of goods under certain circumstances to prove the exercise of due care (*Wintringham* v. *Hayes*, 144 N. Y. 1) does not apply to this case since it appears that the bailor by its employee, who was on the premises of the bailee, had the same opportunity to care for the goods and to know what care was taken of them, which the bailee possessed, and so the onus of disproving negligence was not cast upon the

latter by merely showing that the article was delivered in good condition, and that the injury complained of would not happen in the ordinary course." The plaintiff argues in its brief that the familiar case of *Marvin* v. *Brooks* (94 N. Y. 71) is decisive of the case at bar. The two cases, in my judgment, could not be more different. In the *Marvin* case a principal placed money in the exclusive care of an agent, who both had exclusive control of the moneys and exclusive knowledge of the manner of the disposition thereof. The Court of Appeals held that under those circumstances the agent was bound to account and bore the burden of explanation. The facts in the case at bar are altogether different. In this case there was no trust; there was a bailment. In this case there was no exclusive possession; there was divided possession. In this case there was no money involved; there were specific articles of personalty. In this case, as I view it, applying the rules of law which properly control it, there is no legal presumption that defendants were responsible for the loss of the goods and no burden of proof on defendants of explaining the loss, and it follows that plaintiff, therefore, could recover, if at all, only by proving that the loss occurred as a consequence of and incidental to the negligence or fault of defendants, of which there is lacking any credible proof whatever, and I find, as matter of fact, that neither negligence nor fault was established by plaintiff. There is no proof that defendants failed to exercise due care in safeguarding the loft, nor is there any credible proof that any loss occurred through any delinquency or shortcoming on their part. While it is not, perhaps, necessary, in view of the foregoing conclusions of fact and law, to pass upon the question of the sufficiency of plaintiff's complaint in equity, it is proper for the court to state that it feels grave doubt of the correctness of its ruling at the trial, denying the motion of defendants to dismiss the complaint, on the grounds (a) that plaintiff has an adequate and sufficient remedy at law, and (b) that the proper remedy in this case was a suit at law for breach of contract and/or for conversion. Reconsideration of this question is permissible in view of defendants' motion to dismiss made at the close of the trial, upon which decision was reserved and briefs requested. The plaintiff fundamentally rests its alleged equitable right to an accounting upon its assertion that a fiduciary relationship exists between plaintiff and defendants on the authority of *Marvin* v. *Brooks* (*supra*) and similar cases following it. The other authorities cited relate to cases of factorage in the early common-law sense. They have no application, I think, to the instant case, where the defendants, as is indicated above, are not factors in any true sense of the term, but are simply financial agents. Under the authority of cases like

*Newburger-Morris Co.* v. *Talcott* (219 N. Y. 505) and *Shoyer* v. *Wright-Ginsberg Co.* (240 id. 235) it would seem that the relationship is simply one of debtor and creditor, the debtor having also given collateral security for the payment of the indebtedness. It should be noted in passing that plaintiff errs in its brief (p. 19) in stating that the action in the *Shoyer Case (supra)* " was one for an accounting." It was an action at law, tried at Trial Term, New York county, before Mr. Justice GIEGERICH and a jury and retried after the appeal above cited before Mr. Justice ERLANGER and a jury at Trial Term, New York county. Neither the complaint nor the counterclaim prayed for equitable relief. The case at bar is not in the least like the early common-law and equity cases cited by plaintiff wherein the factor was the selling agent as well and was intrusted with the sole and exclusive possession, control and custody of the goods, both as matter of law and fact, for the purpose of the sale thereof. It seems to me that in the instant case, as in the *Shoyer* case, the self-styled " factor " was in truth and in fact " simply a commercial banker making loans on certain securities." (See the learned and able opinion of HISCOCK, Ch. J., in the *Shoyer* case, 232.) If these views are correct, and bearing in mind that as economic and business conditions alter the law also must alter, particularly on so vital a business subject as factors, then the *Newburger* and *Shoyer* cases have substantially altered the juridical status of factors, at least in this great commercial municipality. And it follows, accordingly, that plaintiff's true remedy in the case at bar, if indeed it has any, for the recovery of the value of its merchandise, is a simple, ordinary, everyday action at law for breach of contract and/or for conversion. (Cf. *Barber* v. *Sterling*, 68 N. Y. 267, 273, 274, a suggestive and thoughtful opinion.) Mr. Justice DOWLING, writing for the unanimous Appellate Division in this department (*Ehrlich* v. *Mills, Inc.*, 215 App. Div. 116, 120), has again recently pointed out that in order to justify a decree for an accounting there must exist " some trust or fiduciary relation between the parties " and that otherwise a court of equity is not justified in interfering. In the absence of this relationship in the case at bar it would seem at least doubtful whether any cause of action in equity was established. (*Ehrlich* v. *Mills, Inc.*, *supra*, per DOWLING, J.; *Moore* v. *Coyne*, 113 id. 52; *Harle* v. *Brennig*, 131 id. 742.) If indeed this were not the rule, every case of bailment would be litigated in equity, which is a *reductio ad absurdum*. It seems to follow, accordingly, that the complaint must be dismissed. (*Ehrlich* v. *Mills, Inc.*, *supra; Poth* v. *Washington Square M. E. Church*, 207 App. Div. 219; *Jackson* v. *Strong*, 222 N. Y. 149; editorials, N. Y. L. J. Feb. 2, 3, 1925.) I have deemed it advisable to pass upon this point, because it has been

briefed by counsel on both sides, and while, as heretofore indicated, it is not necessary in the case at bar to pass upon it, the enlightenment of the mercantile community on this important point of business law has seemed both advisable and expedient. Another question arises concerning defendants' right to recover compound interest. The contract calls for compound interest toward the end of paragraph 10. Defendants charged interest in accordance with this provision on each monthly statement, and then the following statement would commence with the balance, and, as one of the defendants testified, compound interest thus was charged against plaintiff. While the difference in amount between such charge and ordinary simple interest is only $209.02, the point of law involved is important, in view of the existence of so many so-called " factors " and " financial agents." I am thoroughly satisfied that plaintiff is correct in its contention that so much of the agreement as provided for the charge of interest monthly was illegal. The point involved is very simple. It really is nothing more or less than that an agreement to pay compound interest, if made at a time prior to the due date of simple interest, is against public policy, as over-avaricious, and, therefore, void. It savors too much of over-reaching; nor do I think my ruling unsupported by authority. As I read the case of *Newburger-Morris Co.* v. *Talcott (supra)* the reasoning of CARDOZO, J., fairly concludes this point. It is true that the United States District Court for the Southern District of New York, in a nearly parallel case, cited by defendants, has sustained the right to thus charge interest monthly. (*McManus* v. *Sawyer*, 231 Fed. 231, 237.) I am not bound by this decision. Its public policy seems bad and its law worse. The rule of our State courts, as enunciated by the Court of Appeals, in any case is controlling upon this court, were it disposed, as it is not, to feel any doubt upon the subject. Under the stipulation entered into between the parties, counsel have conceded that defendants' claim as to the amount of plaintiff's indebtedness is correct, to wit, the sum of $13,031.82. Of this sum $8,500 has admittedly been paid by plaintiff to defendants since the commencement of the present action. This leaves due to defendants from plaintiff $4,531.82, to which must be added interest from June 1, 1925, the date when the indebtedness was computed, plus the sum of $99, constituting the expenses of the auction sale (Lien Law, § 200), less the sum of $209.02, being the difference between interest charged monthly and simple interest, as stipulated, subject to verification. Judgment is directed accordingly in favor of defendants, with costs. Please submit in accordance with the findings of fact and conclusions of law herein enunciated. Order signed.