Michael Catalano, J.
Both parties sought a declaratory judgment and injunction concerning three life insurance contracts, for $2,000, $1,167 and $4,000, respectively. Travelers *350 Insurance Company (herein called “ Travelers ”) paid the first sum of money into court; Metropolitan Life Insurance Company (herein called “ Metropolitan ”) paid the other two sums into court; both were discharged. (See CPLR 2601.) The parties now seek this money.
The pleadings admit and the court finds:
In 1956, Travelers issued a group life insurance policy to J. & A. Keller Machine Company, Inc. (herein called “ Keller ”) insuring Keller’s employees, including one Lewis S. Wargo (herein called “ insured ”) being plaintiff’s natural father and defendant’s husband to whom was issued certificate of insurance No. 61 for $2,000.
Metropolitan issued two insurance policies on the insured’s life, one for $1,167, No. 13,881,400-A in 1942 and another for $4,000, No. 18,680,105-A in 1951.
On August 20,1949, defendant married the insured when plaintiff was 10 years old. They lived together as a family. Defendant reared, nurtured and took care of plaintiff, behaving as his mother.
On April 18, 1961, the insured suffered a stroke and in 1963 he suffered a heart attack, confining him to the hospital and his home, unable to work for one and one-half years.
The court also finds:
On December 2, 1941, the insured applied for the $1,167 Metropolitan policy, naming Irma Wargo, his first wife as beneficiary and reserving the right to change the beneficiary without her consent. On January 1, 1942, that policy was issued containing said beneficiary and reservation. On March 6, 1950, the insured designated Emma Wargo his second wife as beneficiary, Lewis J. Wargo his son as contingent beneficiary, reserving the right to change both without their consent; an indorsement of change of beneficiaries dated the same date was attached to the policy. The change of beneficiary clause in the policy states: “When the right to change the Beneficiary is reserved, and if there be no written assignment of this Policy on file with the Company, the Insured may (while this Policy is in force) designate a new Beneficiary, with or without reserving the right to change thereafter, by filing written notice of this change at the Home Office of the Company accompanied by this Policy for endorsement of the change thereon by the Company. No such change shall be effective unless and until it is so endorsed on this Policy.”
On April 27, 1951, the insured applied for the $4,000 Metropolitan policy, naming Emma War go, wife, beneficiary, and Lewis J. Wargo, son, contingent beneficiary, reserving the right *351 to change them without their consent. On June 1, 1951, that policy was issued containing said beneficiaries and reservations. The change of beneficiary clause therein is generally the same as in the $1,167 policy, including: “The Policy must be presented to the Company at its Home Office for endorsement of any change of Beneficiary or contingent Beneficiary except that if the right to change the Beneficiary or contingent Beneficiary has been reserved, the Company, may, in its discretion, waive this requirement.” (Emphasis supplied.)
On July 1, 1956, Travelers issued the $2,000 certificate of insurance under Group Life Policies No. G84186 and No. GA84186, covering the insured as an employee of J. & A. Keller Machine Company, Inc., naming Emma Wargo, wife, beneficiary and stating: ‘ ‘ Under the group policy the Employee has the right to change the beneficiary by filing with the Employer a written request for such change on forms satisfactory to the Company, but such change shall become effective only upon receipt of such request at the office of record stated in the policy.” Those policies state: “ Any Employee insured hereunder may designate a new beneficiary at any time by filing with the Employer a written request for such change on forms satisfactory to the Company, but such change shall become effective only upon receipt of such request at the Office of the Employer where the records of the Employee’s insurance under this policy are maintained.”
Defendant received all of his moneys from the insured during coverture, except for small sums for pocket money, and she preserved and commingled the family funds, using a personal checking account with a local bank to make large payments, otherwise she paid family debts in cash. On October 24, 1959, she paid by her personal check the sum of $4,171.30 to Jack Stevens Buick for an automobile owned by the insured. She paid in cash for the insured’s life insurance premiums from the family funds, receiving receipts therefor, upon the Metropolitan $4,000 policy to October, 1963, when premiums were waived because of his total disability to work, upon the Metropolitan $1,167 policy at the rate of $2.39 monthly until his death. No premiums were paid by her upon the Travelers $2,000 insurance because it was employer paid or waived.
On October 1, 1963, the insured’s physician executed for Metropolitan, a statement of the insured’s total disability stating that the insured was 53 years old; he ceased to work March 15, 1963; he was competent to indorse checks with the realization of the nature and consequences of his acts.
*352 111 early January, 1964, plaintiff told defendant that he wanted to marry. Defendant became angry and ordered him to be home before midnight.
On April 11, 1964, plaintiff told defendant that he was going to an engagement party and would be home after midnight; she ordered him to leave home permanently.
The insured’s holograph dated July 2, 1964, requested a full Catholic burial from St. Elizabeth’s Roman Catholic Church, by James E. Grace of Ontario Street, Buffalo, New York, and that he be buried in his lot at Mount Olivet Cemetery next to his late wife, Irma War go. Defendant was not Roman Catholic, plaintiff and insured were.
Defendant refused to allow plaintiff and plaintiff’s wife, and insured’s seven sisters and three brothers and their children, to come to defendant’s home while she was there because they had attended plaintiff’s wedding on August 29,1964. Defendant threatened to prevent plaintiff’s marriage and she did not attend it herself.
A letter dated September 14, 1964, signed by insured’s physician, stated: “ This is to certify that Mr. Lewis War go (the insured) has been under my care regularly since April, 1961. In order to improve his health, I have recommended that he change his residency temporarily.”
Plaintiff and insured were very close as father and son. Defendant’s antagonism toward plaintiff aggravated insured’s illness.
After September 14, 1964, insured went to live with plaintiff for four days, then returned to live with defendant.
October 15, 1964, the insured left defendant and went to live with plaintiff, and never returned to live with defendant.
On November 8, 1964, defendant wrote a letter to Travelers concerning the $2,000 insurance, stating that the insured ‘ ‘ has recently or in the near future, will endeavor to change the beneficiary from me Mrs. Emma War go, his wife, to his son.” She did not claim ownership of this insurance by gift, purchase or otherwise.
On November 17, 1964, the insured executed, signed and filed with his employer a written request for a change of beneficiary of the $2,000 Travelers insurance from defendant to plaintiff on a form issued and approved by the insurer, which was received at the employer’s office where the records of the insured’s insurance under the Group Life Policies No. G84186 and No. GA84186 were maintained.
On November 19, 1964, defendant verified her petition for support against the insured, On January 8, 1965, defendant *353 and insured appeared in Family Court of Erie County and they agreed before Judge Cabboll of that court that she receive rentals and have occupancy of their dwelling; that he transfer his automobile to her; that she surrender two life insurance policies to him; that she pay him $100 within two months; resulting in an order of support duly granted by the court and signed by Judge Cabboll. Defendant never delivered the two Metropolitan policies to insured as ordered by the Family Court and as she agreed to do.
On January 11, 1965, the insured being mentally competent, signed two Metropolitan forms revoking any previous designations of beneficiary and contingent beneficiary, and designating plaintiff as revocable beneficiary to receive payment of any amount due at his death under the two Metropolitan policies. These two policies were withheld by this defendant although ordered by the Family Court to be delivered by this defendant to the assured. Metropolitan’s agent held these designation forms, reporting to his superior officer that: “ On January 11, 1965, I witnessed a change of beneficiary on the above policies. The policies were not available at the time and the newly named beneficiary is still in the process of getting them from the former beneficiary by legal action. ’ ’
On January 20, 1965, the insured died. Plaintiff followed the insured’s wishes, hiring James E. Grace Funeral Home to conduct the funeral services from St. Elizabeth’s Church and burying him in Mount Olivet Cemetery in his grave next to his first wife, Irma, and relying upon the insurance proceeds to pay the funeral bill.
Defendant refused to make the funeral arrangements; refused to attend the funeral; refused to pay the funeral bill.
Although the court is obliged to try and decide all issues since none is required to be tried by a jury (CPLE 4211), and a motion for trial by an advisory jury was not made within 20 days after the note of issue was filed (CPLE 4015), on its own initiative, the court submitted eight issues of fact to be decided by the court to an advisory jury (CPLE 4015).
The issues submitted (CPLE 4212), to be returned as special verdicts in the form of written questions susceptible of brief answer, after the court gave sufficient instructions to enable the jury to make its findings upon each issue (CPLE 4111, subd. [b]), and the jury’s answers thereto, are:
1. On November 17, 1964, did Lewis J. War go, the son, use fraud and/or undue influence to cause Lewis S. War go, his father, to make the son beneficiary instead of Emma War go for the $2,000 Travelers Insurance? Answer: No.
*354 2. On November 17, 1964, was Lewis S. Wargo, tlie father, so mentally ill that he did not know what he was doing when he signed the change of beneficiary for the $2,000 Travelers Insurance? Answer: No.
3. On January 11,1965, did Lewis J. Wargo, the son use fraud and/or undue influence to cause Lewis S. Wargo, his father, to make the son beneficiary instead of Emma Wargo, for the Metropolitan Insurance? Answer: No.
4. On January 11, 1965, was Lewis S. Wargo, the father, so mentally ill that he did not know what he was doing when he signed the changes of beneficiary for the Metropolitan Insurance? Answer: No.
5. On January 11, 1965, did Lewis S. Wargo, the father, sign the changes of beneficiary for the Metropolitan Insurance? Answer: Yes.
6. In 1950, did Lewis S. Wargo, the father, intending to make an absolute gift to her, deliver to his wife, Emma Wargo, the $1,167 Metropolitan Insurance Policy, waiving his right to change the beneficiary? Answer: No.
7. In 1951, did Lewis S. Wargo, the father, intending to make an absolute gift to her, deliver to his wife, Emma Wargo, the $4,000 Metropolitan Insurance Policy, waiving his right to change the beneficiary? Answer: No.
8. In 1956, did Lewis S. Wargo, the father, intending to make an absolute gift to her, deliver to his wife, Emma Wargo, the $2,000 Travelers Insurance Certificate, waiving his right to change the beneficiary? Answer: No.
Upon his own initiative, the undersigned, who is required to decide said eight issues, confirms the jury’s answers in whole (CPLR 4403) and finds them to be facts.
The reason why the court desired the assistance of an advisory jury was that it was informed by counsel that exceptionally conflicting and- bitter testimony would be given by many witnesses, including decedent’s widow, his son, his son’s wife, his sisters, his wife’s sister and nieces, his physicians, his employer’s representative, his lawyer, his priest, his nurse who is a religious brother and others.
A life insurance policy is a contract to pay a certain sum of money to the payee on the death of the assured; being a chose in action, it may be assigned as collateral or absolutely. (Insurance Law, § 146. See, also, Steinback v. Diepenbrock, 158 N. Y. 24, 30, 31.) The policy and assignment will be read together to determine the intention of the parties which will be enforced by the courts. (Ibid., 31.)
*355 If the policy so provides, the assured may name a beneficiary as payee, be he a donee beneficiary, a creditor beneficiary or an incidental beneficiary. A donee beneficiary is a payee receiving a gift; a creditor beneficiary is a payee to whom the assured owes a legal duty; an incidental beneficiary is neither donee nor creditor. (Restatement, Law of Contracts, § 133, pp. 151-152.)
The assured’s rights under the policy may be given to another inter vivos, provided the donor intends to give, delivers the property given pursuant to such intent, and the donee accepts. (Matter of Szabo, 10 N Y 2d 94, 98.) Delivery must vest the donee with control and dominion over the property. (Ibid.)
A gift inter vivos may be proved by declarations of the donor (Mutual Life Ins. Co. v. Holley, 280 N. Y. 330, 335), although not in writing. (Katzman v. Ætna Life Ins. Co., 309 N. Y. 197, 203.)
The delivery necessary to constitute a valid gift must divest the donor of all possession and dominion over the policy; if the present right to the property is not transferred, no valid executed gift results. (Williams v. Guile, 117 N. Y. 343, 347, 348.) Delivery whereby the transferor and transferee have equal access to the policy is not the actual delivery needed to make a gift. (Fowler v. Butterly, 78 N. Y. 68, 72.)
"Where a husband agrees with his wife that he will take out a policy on his life and name her as beneficiary if she will pay the premiums, and the policy is delivered to her, and she pays all or substantially all of the premiums out of her own eaimings, and she makes funeral arrangements at his death relying upon the avails of the policy, she is a creditor beneficiary and the husband’s attempt to have named another as beneficiary before his death would be futile, (Katzman v. Ætna Life Ins. Co., 309 N. Y. 197, 201, supra.)
Whether the interest of the named beneficiary in the policy be called vested or not, it may not be divested without the beneficiary’s consent, unless such right is reserved in the policy. (Davis v. Modern Ind. Bank, 279 N. Y. 405, 409.) The right to change the incidental beneficiary is absolute, whether the beneficiary objects or consents, and the formalities to do so need only substantial compliance, even though required to protect the insurer, the assured and the beneficiary. (Fink v. Fink, 171 N. Y. 616, 622, 623.)
The named beneficiary in the policy possesses a right to maintain an action thereon, although subject to defeasance by the assured. (Rosenblum v. Manufacturers Trust Co., 270 N. Y. 79, 83.)
*356 When an assured signs a change of beneficiary form provided by the insurer and files it with the local office as is required by the policy, and all that remains to be done is purely formal by the insurer or its representative, such change is effective. (Luhrs v. Luhrs, 123 N. Y. 367, 370, 373. See, also, Matter of Connors, 246 App. Div. 144, 145, affd. 271 N. Y. 560.)
An incidental beneficiary who withholds possession of the policy so that it cannot be delivered to the insurer for indorsement or re-issue, cannot thereby prevent the assured from exercising- his expressed right to change the beneficiary. (Thomas v. Thomas, 131 N. Y. 205, 208, 209. See, also, Schoenholz v. New York Life Ins. Co., 234 N. Y. 24, 29, 30.)
The question, whether a life insurance policy can be given to a third person although the right to change the beneficiary is reserved therein, has been answered differently by various jurisdictions, but the majority view is yes if all elements of a gift are proved. (See 24 Amer. Jur., Gifts, § 70, p. 766; 38 C. J. S., Gifts, § 53, p. 838.) The policy must be read to determine the full rights and duties of the insurer and assured, such as the insurer must approve of the new beneficiary, or the change must be indorsed on the policy, or the policy must accompany the request for a change, or the like. The inquiry then is, first, what are the expressed rights and duties, and second, were any of the rights waived, and third, were any of the duties not performed. (See Stepson v. Brand, 213 Miss. 826, 834-835.) Proof of a gift in such cases should be clear and convincing so as to avoid fraud based on the alleged donee’s mere possession of the policy at the time of the alleged donor’s death. (Ibid.)
An assignee of a life insurance policy is competent to testify concerning personal transactions between him and the deceased assignor in an action on that policy against the named beneficiary therein (Ward v. New York Life Ins. Co., 225 N. Y. 314, 318-319), but the triers of the fact will more carefully and critically scrutinize such evidence offered against a decedent who is not alive to contradict it. (Ibid., p. 322.)
A person, who knowingly possesses any personalty owned by another, is liable to the owner for his refusal to deliver it upon demand or for his dealing with it adversely. (Restatement, Torts, § 871, subd. d, p. 416; 8 C. J. S., Bailments, § 43, p. 490.) Where the bailment is for mutual benefit, the bailee is obliged, in the absence of an express agreement to the contrary, to exercise ordinary care in relation to the article bailed. (Aronette Mfg. Co. v. Capitol Piece Dye Works, 6 N Y 2d 465, 468.)
Section 24-a of the Personal Property Law (L. 1952, ch. 820, § 1, as amd. by L. 1954, ch. 674) provides, in part, that: “ 1. If *357 a person entitled to receive * * * (b) money payable by an insurance company * * * under * * * a policy of life * * * insurance * * * designates, as provided in this section, a payee or beneficiary to receive payment thereof upon death of the person making the designation * * * the right of the person so designated to receive payment in accordance with the designation, and the ownership of the money, securities or other property so received, are not defeated or impaired by * * * gift * # * This section is applicable to a designation even though it is revocable or subject to change by the person who makes it * * * 2. A person entitled to receive payment includes: * * * (c) any person entitled to receive payment by reason of a payee or beneficiary designation described in this section. 3. A designation of a beneficiary or payee to receive payment upon death of the person making the designation or another must be in writing and signed by the person making the designation, and * * * be * * * (b) agreed to by the insurance company * * * authorized to conduct the business of life insurance ’ ’.
This section was recommended by the Law Revision Commission. “Its purpose is to remove any uncertainty which may exist as to the validity of a designation of a beneficiary to receive payment”. (N. Y. Legis. Doc., 1952, No. 65 [G], p. 166; 1952 Report Recommendations and Studies, pp. 163-185.)
Undue influence, a type of fraud, when relied upon to annul a transaction inter partes, such as a gift inter vivos, must be proved and cannot be presumed. (Matter of Smith, 95 N. Y. 516, 522, 523.) The proof may be made in the first instance when a relationship of guardian and ward, or between persons one of whom depends on and is controlled by another, and the personal intervention of the party claiming the benefit is shown. (Ibid.) A person of great intelligence, experience and adroitness in business affairs naturally has an advantage over one less qualified, and the superior might have some control over the inferior, but such is not undue influence. (Stout v. Smith, 98 N. Y. 25, 31.)
In this case, defendant was neither a creditor nor a donee beneficiary in any of the three insurance contracts. On the Travelers $2,000 certificate, defendant was an incidental beneficiary who was properly changed by the insured who performed all necessary acts according to the terms of the Group Life Policies and the certificate issued thereunder. On the two Metropolitan policies, defendant was a primary incidental beneficiary and plaintiff was a secondary, incidental, contingent beneficiary; the latter becoming the sole beneficiary by the *358 insured’s execution and filing of the proper forms; the former preventing indorsement on the policies by her wrongful withholding. This indorsement requirement was waived by payment into court. This waiver in the insurer’s discretion was expressly reserved in the larger Metropolitan policy and impliedly reserved in the others.
Plaintiff was not guilty of any fraud or undue influence; defendant was guilty of unclean hands. Defendant as mere bailee of the certificate and policies had the duty to deliver them to the insured upon demand and not to make an adverse claim of ownership against her bailor.
It is incredible as a matter of fact that an assured intentionally and orally made an absolute gift in praesenti of a life insurance policy to a named beneficiary where the application for insurance named said beneficiary as a first beneficiary; reserved the right to change that beneficiary; named a second, contingent beneficiary; reserved the right to change that beneficiary, and where the policy was issued containing those clauses, and where the policy was delivered by the assured to the first beneficiary for safekeeping in a common family box kept in the home of all three persons, and where the second beneficiary left the home of the parties, followed by the assured, both living together in a separate home, and where the assured signed a form provided by the insurer, naming the second beneficiary as the sole beneficiary and performing all acts necessary to change the beneficiary not made impossible by the withholding of the policy by the first beneficiary, and where the insurer paid the money into court, waiving all claim to that money. Judgment for plaintiff, without costs.