OPINION OF THE COURT
Andrew S. Fusco, J.
In July 1985 the plaintiff leased a 1985 Toyota Camry and a 1985 Buick Century from the defendant for a term of 48 months. The plaintiff made timely lease payments during the term.
Pertinent terms of the lease agreements provided that the plaintiff would not drive either car in excess of 70,000 miles, *1068 that the plaintiff would deposit with the defendant $275 on the Toyota and $235 on the Buick as security deposits for damages to the vehicles, and that "at the end of the lease I’ll return the vehicle to you in good condition” (emphasis added).
In 1989 at the end of the lease, the plaintiff returned the vehicles to the defendant. Both cars had less than 70,000 miles on them (Toyota — 61,852; Buick — 69,879). The defendant’s employees inspected both vehicles and provided the plaintiff with a list of repairs needed to be done on each car. This list of those alleged repairs are itemized later in this decision.
The defendant’s estimated cost of said needed repairs to the Buick was $367.50. The defendant’s estimated cost of said needed repairs to the Toyota was $602.30.
The plaintiff demanded return of his security deposit and the defendant declined, contending the estimated cost of repairs exceeded the amount of security deposit.
The plaintiff then commenced this action for return of the $510 security deposits in the title of "'John Bouck v. Sam Dell, Jr., d/b/a Ross Leasing c/o Sam Dell Pontiac-Buick. ” At trial, by stipulation, the title was amended to "John F. Bouck v. Ross Leasing Corporation. ” Defendant counterclaimed for the value of the damage/needed repairs listed below.
The chart below itemizes the damages/needed repairs to the two vehicles which proof at trial adduced. The court has grouped, for the purposes of this decision, the damages as follows: The items in Group A are those that the court takes notice wear out on an automobile during its ordinary and usual use; Group B consists of those items which generally do not break absent some negligence by someone; Group C consists of those items which should be serviced and maintained on an automobile during the ordinary course of automobile maintenance.
[[Image here]]
*1069 [[Image here]]
This decision shall deal first with the items in Group B, then those in Group C, and finally Group A.
At trial, the plaintiff attributed the cause of every broken item on both Groups B above to the negligence of either the defendant, servicemen at two repair shops affiliated with the defendant (namely, Sam Dell Buick-Pontiac and Sam Dell Toyota), or the manufacturers of the cars. The plaintiff testified that the Toyota’s cruise control knob, the Buick’s antenna, and the Buick’s hub cap key were all broken by Sam Dell repairmen while servicing other aspects of the cars at various times during the second and third years of these leases. The plaintiff also testified that the Buick’s radio volume control and glove box latch were manufacturing defects which were present from the first day that the plaintiff leased the car and of which the defendant had notice via plaintiff’s complaints throughout the lease term.
Defense counsel urged the court that it is inherently unbelievable that every broken item listed above was caused by someone other than the plaintiff. However, the defense introduced no evidence whatsoever to counter the plaintiff’s allegations about how Group B items were damaged.
Absent such evidence, the plaintiff’s testimony regarding Group B items is uncontroverted and is accepted as fact by the court. The fact finding notwithstanding, the court is still posed with the following question of law: Is the plaintiff, as lessee, nonetheless responsible to the lessor for damages caused by third parties?
I find little New York law on this subject and sister State authority is divided: "Some courts have taken the view that an agreement (requiring the return of the vehicle in good condition) renders the lessee liable even though the damage was sustained without any fault on his part.” (Annotation, Motor Vehicle Lease Agreements, 43 ALR3d 1283, 1313, citing Miller v Dyer, 243 Ark 981, 423 SW2d 275 [1968]; Morrow, Inc. v Paugh, 120 Ind App 458, 91 NE2d 858 [1950]; and Bryant v Clearwater Timber Co., 53 Id 413, 24 P2d 46 [1933].)
"On the other hand, (some) courts (have) held that the lessor could not recover for damages to the vehicle under a provision requiring the return of the leased vehicle in the same or good condition, in the absence of a showing that the damage was caused by the negligence of the lessee.” (Annota *1070 tion, Motor Vehicle Lease Agreements, 43 ALR3d, at 1314, citing U-Drive-It v Ernst, 23 So 2d 665 [La 1945]; Christensen v Carlson, 177 Wash 682, 33 P2d 91 [1934]; and Metzger v Hertz Drivurself Stas., 112 Pa Super 365, 171 A 118 [1934].)
In the case at bar, the court embraces the latter of the above two lines of cases. The court notes that the Christensen holding and the Metzger dicta involve fact patterns where the damages were allegedly caused by the lessor’s servants, predecessors, or affiliates, not unlike the allegations presented in this case.
Further, the court finds the lease at bar to be a bailment for the mutual benefit of both parties (Davis v M.L.G. Corp., 712 P2d 986 [Colo 1986]); under mutual benefit bailment common law, plaintiff Bouck would be liable for only those damages caused by his failure to exercise ordinary care and diligence. (14 Blashfield, Automobile Law and Practice § 475.13 [1969].) The record does not indicate that the plaintiff here failed to exercise ordinary care and diligence.
Therefore, for the reasons stated above, this court holds that the plaintiff should not be held responsible for any of the Group B repairs listed above.
Likewise, the court feels that the Group C items above should not be the lessee’s responsibility in this case. Regular oil and fluid changes and lubrications are inherently required with the diligent operation of every car. The undisputed testimony of the plaintiff Bouck indicates that lubrication, oil and fluid changes were conducted regularly on these cars during the term of this lease by Quick Lube of Auburn and J & J Import Auto Service of Auburn.
There is no evidence here of excessive wear to the drive train components of these automobiles. Excessive drive train wear, were it present, could constitute objective evidence that might contradict the plaintiff’s testimony regarding the regular servicing of these cars. Absent some proof that the lessee did not regularly lubricate the vehicle and change its fluids during the course of the lease, the lessee cannot be held liable for any regular fluid change or lubrication that may be needed at the end of the lease, this court holds. So too with regular service adjustments that a car and its components require from time to time.
The most difficult determination here is whether the lessee should be held liable for the Group A repairs listed above. Plaintiff argues that worn tires, worn brakes, rusted tailpipes *1071 and the like are items of ordinary wear and tear on five-year-old cars, and that a lessee should not be held responsible for items of ordinary wear and tear.
Defendant counters that the cars, in their present condition, could not pass New York State inspection because of the worn tires and brakes. Defendant contends that a car which cannot pass inspection cannot be deemed to be in good condition. Thus, the cost of new tires and new brakes, needed to make the car inspection-worthy for resale, should be borne by the lessee.
Defendant’s argument, while apparently sound on its face, becomes illogical when the court tries to value the extent of a lessee’s liability. If a leased car is returned with Vs 2 inch of tire tread and if a court applies the rule above which defense urges, what is the lessee’s responsibility? Is it the cost of a new tire (as defendant contends) or is it the pro rata value of the additional Vs 2 inch of tread needed to make the tire legal? (The court takes notice that the New York State requirement for a tire to pass inspection is %ands of tread in two grooves [ribs] of the tire.)
A similar computation exercise in pennies would face the court when it tried to value the thickness of worn brake pads.
Thus, the court finds that when a company like the defendant leases a vehicle for 70,000 miles, it should expect that when the car is returned, 70,000 miles later, items like tires and brake pads will be worn. Restoring these items to make the auto roadworthy for the next lessee or buyer, this court finds, is the defendant’s responsibility. That is a cost of doing business.
Thus, the court holds that the plaintiff should not be responsible for the Group A items.
Judgment for plaintiff for $510 plus costs. Defendant’s counterclaims are dismissed.