**CFC FABRICATION, INC., et al.,**
**Plaintiffs–Appellees/Cross–Appellants,**

v.

**DUNN CONSTRUCTION COMPANY, INC.,**
**Defendant–Appellant/Cross–Appellee.**

No. 90–1187

**Summary Calendar.**

United States Court of Appeals,
Fifth Circuit.

Nov. 30, 1990.

Rehearing Denied Jan. 2, 1991.

William R. Purdy, G. Gram Meadors, Ott & Purdy, Jackson, Miss., for defendant-appellant-cross appellee.

Clifford K. Bailey, III, Wise, Carter, Child & Caraway, Jackson, Miss., for plaintiffs-appellees-cross appellants.

Before GEE, SMITH, and WIENER, Circuit Judges.

**JERRY E. SMITH, Circuit Judge:**

Defendant Dunn Construction Company ("Dunn") seeks reversal of a judgment in favor of plaintiffs CFC Fabrication, Inc., and FMC Acquisition Corp.,[1] asserting that insufficient evidence supports the jury's conclusion that Dunn is liable to CFC for lost and damaged concrete forming materials[2] rented to Dunn by CFC. We conclude that, since CFC failed to establish that Dunn exclusively possessed the equipment when it was lost and damaged, the district court erred in denying Dunn's motion for a directed verdict. We accordingly reverse the judgment insofar as it relates to the lost and damaged equipment but affirm with respect to CFC's claims for rent, freight, and sale charges. We also affirm the district court's denial of CFC's motion for prejudgment interest.

## I.

Dunn rented concrete forming materials from CFC from 1983 to 1986 and used these materials in a number of construction projects, nine of which are at issue in this case.[3] When Dunn intended to bid on a construction project, it would contact CFC for an estimate of the forming materials needed for the job.

Dunn issued purchase orders to CFC describing the equipment needed, the term of lease, and amount of rent. CFC shipped the requested items, enclosing shipping orders specifying the products shipped, their quantity, and the date of shipment. CFC retrieved equipment no longer needed by Dunn from the job sites, using its own trucks or common carriers to transport the materials to one of its facilities (frequently to the one in Chattanooga, Tennessee).

CFC inventoried the rented items upon their return to its storage facilities, contemporaneously preparing "receiving orders" specifying the type and quantity of equipment received. Some items were not counted immediately upon their arrival.

By September 1985, Dunn had completed all of the concrete work on the projects in question and arranged for CFC to pick up any remaining equipment. CFC first notified Dunn of a deficiency about a year later, asserting that Dunn owed it $20,505.13 for shortages, equipment damage, additional rent and freight charges, and sale of equipment. CFC continued to notify Dunn of shortages until July 1987, when CFC asserted that Dunn owed it $161,090.12, primarily for shortages.

## II.

After Dunn refused to pay this amount, CFC filed suit in Tennessee state court; Dunn removed the case to federal court on the basis of diversity jurisdiction, whereupon it was transferred to the Southern District of Mississippi, where CFC's case proceeded on both tort and contract theories.

CFC's evidence consisted primarily of the shipping and receiving orders, which revealed a disparity between the amount of equipment originally shipped to Dunn and the amount counted by CFC after its return. Dunn's employees testified that the company used CFC's equipment carefully and that no CFC property was left behind as CFC carted it away.

Dunn unsuccessfully moved for a directed verdict at the close of CFC's case, asserting that CFC had failed to establish a *prima facie* case of negligence, proof of which is required under the law of bail-

---

1. This lawsuit was originally filed by Concrete Forms Corporation. However, the district court substituted CFC Fabrication, Inc., as the proper party plaintiff after it purchased Concrete Forms Corporation's assets. In addition, the district court allowed FMC Acquisition Corp. to intervene at trial based upon its ownership of Concrete Forms Corporation's accounts receivable and causes of action. For purposes of convenience, we refer to appellees collectively as "CFC" and "plaintiff."

2. A contractor uses concrete forming materials to mold freshly poured concrete into a desired shape, such as a wall, elevator shaft, or column.

3. These projects are Mirror Lake Office Plaza, Ramada Renaissance Hotel, Lakeland Medical Center, and St. Dominic Memorial Hospital in Jackson, Mississippi; Rush Medical Center in Meridian, Mississippi; D.H. Holmes and J.C. Penney department stores in Ridgeland, Mississippi; Sugar Beach Condominiums in Gulf Shores, Alabama; and Perdido Beach and Yacht Club in Perdido Key, Florida.

ment. Arguing that no evidence in the record sufficiently supported a finding of negligence or breach of contract, Dunn again moved for a directed verdict before the case's submission to the jury, and the motion was again denied. Following a $77,333.10 jury verdict for CFC, Dunn filed motions for judgment notwithstanding the verdict and for a new trial, each of which was denied; the court also denied CFC's motion for prejudgment interest. The respective parties appeal these adverse determinations.

### III.

Dunn essentially challenges the sufficiency of the evidence to support the jury's verdict. It accordingly asserts (1) that CFC failed to establish a *prima facie* case of negligence; (2) that even if CFC did raise a presumption of negligence, it overcame that presumption; and (3) that CFC failed to present further evidence from which a reasonable jury could infer Dunn's liability.

### A.

■ Under Mississippi's law of bailment, which governs this situation, the bailee is liable for lost or damaged property only upon proof of its negligence.[4] However, a bailor can raise a presumption that the bailee was negligent if it shows that the goods were delivered in good condition and were not returned or were returned in a damaged condition.[5]

In denying Dunn's first motion for directed verdict, the district court implicitly decided that the evidence would allow a reasonable factfinder to conclude that CFC had established a *prima facie* case. This

decision is subject to review under the test in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc).

■ CFC's evidence consisted almost exclusively of its shipping and receiving orders, i.e., documents recording the type and quantity of equipment shipped to and received from Dunn. We conclude that this evidence reasonably establishes a *prima facie* case. More specifically, CFC's documentary evidence would permit the jury reasonably to decide that CFC shipped the forming materials to Dunn in good condition and that Dunn failed to return the equipment or returned it in a damaged condition.

■ Despite CFC's establishment of a *prima facie* case, it nonetheless is not entitled to a presumption of Dunn's negligence, for there is no showing that Dunn exclusively possessed the equipment during the period during which it was lost or damaged. Although no Mississippi case has explicitly so held, it is settled law that a presumption of negligence does not arise where the bailee did not have exclusive possession and control of the damaged or lost property.[6]

A bailee possessing the bailed property exclusively is presumed negligent, as it "is in a better position to control the conditions that may cause loss or damage and to know, or at least to be able to ascertain, the cause of any actual loss or damage." *Staheli*, 655 P.2d at 683. In contrast, when the bailee does not solely possess the property, he is no more able to prevent or explain the loss than others simultaneously in possession and thus should not be required to explain the loss under pain of liability.[7]

---

**4.** *Pope v. Andrews*, 361 So.2d 71, 72 (Miss.1978) (bailee "burdened with due care") (citing *Yazoo & M.V.R. v. Hughes*, 94 Miss. 242, 47 So. 662 (1908)); *Milner Enters., Inc. v. Jacobs*, 207 So.2d 85, 91 (Miss.1968); *Hamm v. F.B. Walker & Sons*, 198 So.2d 817, 818 (Miss.1967); *Hornsby v. Logaras*, 210 Miss. 512, 514, 49 So.2d 837, 839 (1951).

**5.** *Pope*, 361 So.2d at 72 (citing *Yazoo*); *Milner*, 207 So.2d at 90 (quoting *Yazoo*); *Hamm*, 198 So.2d at 818; *Hornsby*, 49 So.2d at 839 (quoting *Yazoo*).

**6.** *See Staheli v. Farmers' Coop.*, 655 P.2d 680 (Utah 1982); *United States v. Mowbray's Floating Equip. Exch., Inc.*, 601 F.2d 645 (2d Cir. 1979); *Lemnos Broad Silk Works, Inc. v. Spiegelberg*, 127 Misc. 855, 217 N.Y.S. 595 (Sup.1926).

**7.** *Mowbray's*, 601 F.2d at 647 (plaintiff cannot impose liability on bailee, since plaintiff is "under no such disadvantage" with respect to proving loss or damage); *Lemnos*, 217 N.Y.S. at 598 (bailee should not be presumed negligent when it does not "have the exclusive means of showing what became of" the property).

That the above-cited cases involve situations in which the bailor and bailee had *simultaneous* access to the bailed property does not prevent their application to cases in which the parties possessed the property *consecutively*, as in this case. The underlying rationale applies equally to this case: Because CFC did not discover the shortages and damages until after it had possessed the forming materials for a time, it is not necessarily true that Dunn alone knows the fate of the equipment or that Dunn was singularly able to prevent the loss.

If the loss and damage occurred while Dunn possessed the equipment, one could conclude that Dunn alone has information about the loss or damage or that it alone was able to prevent the loss. However, it is entirely unknown whether the loss and damage occurred at that time; CFC failed to present any evidence whatsoever as to the timing of the loss and damage. Although it may be more likely that the loss and damage occurred while the forming materials were in Dunn's possession (because of the comparatively lengthy amount of time during which Dunn possessed the equipment), this in itself does not provide a sufficient basis for concluding that Dunn in fact knew about the loss and damage and thus for *presuming* it negligent.

Were such a presumption applied in cases of "consecutive exclusive possession," the presumption would serve its purposes only where the loss occurred while the defendant possessed the bailed property. However, where the loss occurred while the bailor or some other party possessed the goods, parties entirely unable to explain the loss or damage would be presumed negligent.

This situation does not differ from that in which multiple parties concurrently possess the bailed property. In that scenario, the law does not presume the bailee negligent; nor should it here. Accordingly, because here the CFC failed to raise a presumption of negligence against Dunn, the district court should have granted Dunn's motion for directed verdict.

**B.**

Although we hold that CFC failed to raise a presumption of Dunn's negligence, we note, in the alternative, that Dunn's evidence of its due care would rebut successfully any presumption that might have arisen. In addition, CFC failed to provide any further evidence from which a reasonable factfinder could deem Dunn negligent.

A number of Dunn's employees testified that the company used CFC's equipment with due care. More specifically, they testified that Dunn's workers used the forming materials in accordance with CFC's instructions, inflicted only minimal damage on the equipment, and took effective security measures to protect CFC's property. Dunn needed only to *produce* evidence of due care to rebut any presumption of negligence that might have arisen, *Hamm,* 198 So.2d at 817, and this evidence met that burden.

Although Dunn's successful refutation of any presumption of negligence that might have arisen did not in itself entitle Dunn to a directed verdict, the meager nature of CFC's proof of negligence did. CFC did not respond to Dunn's proof of due care, relying solely upon its documentation of missing and damaged equipment. In the absence of any presumption, this evidence in itself would not permit a reasonable jury to conclude that Dunn negligently caused CFC's losses.

Mississippi law does not permit a factfinder to infer, solely from evidence of loss or damage, that the bailee was negligent. In *Milner,* the court accepted defendant bailee's argument that "negligence cannot be assumed from the mere fact of an accident and an injury. The mere fact that an accident happens is not evidence of negligence." 207 So.2d at 89 (quoting 38 Am. Jur. *Negligence* § 290 (1941)). Similarly, in *Yazoo* the court stated that "[t]he law does not intend or presume negligence" when a bailee fails to return the bailed property. 47 So. at 663 (quoting *Meridian Fair & Exposition Ass'n v. North Birmingham St. Ry.,* 70 Miss. 808, 12 So. 555 (1893)).

Because CFC failed to prove anything more than its losses,[8] the jury was not entitled to infer from this evidence that Dunn was negligent. Consequently, even had CFC presumptively established Dunn's negligence, the district court should have directed a verdict for Dunn at the close of all the evidence.

## IV.

### A.

CFC additionally seeks recovery from Dunn for the lost and damaged equipment on a contractual theory, under which it need not show Dunn's negligence. CFC argues that Dunn agreed to return all equipment and that Dunn's alleged failure to do so constitutes a compensable breach of contract. However, we conclude that because no agreement of the parties expressly augmented the bailee's usual duty of due care, this contractual theory does not support the judgment.

CFC cites the initial purchase order for the D.H. Holmes project and some "understanding of the parties" as evidence of Dunn's alleged contractual obligation to return the equipment and thus of its liability without proof of negligence. However, under Mississippi law a bailor must prove the bailee's negligence unless a contract between the parties *expressly* alters the bailee's obligation. In *Seward v. First Nat'l Bank*, 193 Miss. 656, 8 So.2d 236, 237 (1942), the court observed that "[t]he authorities are practically unanimous that, unless made so by statute or express con-

tract, such a bailee, [sic] is only required to use reasonable care and diligence in carrying out the contract of bailment."

The court in *Greenville Insulating Bd. Corp. v. McMurray*, 164 Miss. 809, 145 So. 730 (1933), similarly held that a bailee is liable only for negligence absent an express contract to the contrary. There, the bailee contractually exempted itself from liability for damage " 'due to tornadoes, cyclones, floods or any act of God' " and resulting from "ordinary wear and tear from reasonable use" of the rented property. 145 So. at 731. The court held that this limited list of exemptions did not impliedly impose liability upon the bailee for all other kinds of damage, including that not attributable to negligence. Such modifications of a bailment contract's usual implied terms, said the court, must be express. *Id.*

Cases from other jurisdictions further illustrate that only express agreements impose liability on non-negligent bailees. For example, in *Bouch v. Ross Leasing Corp.*, 559 N.Y.S.2d 428 (City Ct.1990), the court held that an automobile lessee's agreement to return the leased vehicle in good condition did not absolve the lessor from proving the lessee's negligence.[9] Hence, CFC's contractual theory is to no avail.

### B.

Dunn also asserts on appeal that insufficient evidence supported the jury's conclusion that Dunn owed CFC additional amounts for freight charges and purchases of equipment.[10] Because the jury was enti-

---

**8.** The only evidence of Dunn's negligence was CFC salesman Carmon Holland's statements that the St. Dominic project was a "very messy job" and that he had seen CFC equipment lying on the ground. (Mr. Holland also said, "a lot of times the job itself was the cause of the problem rather than the way a superintendent ran a job. I would say that Dunn had some very clean jobs, and I've seen Dunn have some very messy jobs.") This did not provide the jury a sufficient basis for finding Dunn negligent.

**9.** *See also Consolidated Laundries Corp. v. Regis Operators, Inc.*, 26 A.D.2d 383, 274 N.Y.S.2d 815 (1966); *Safeguard Ins. Co. v. Wilmington Cold Storage Co.*, 267 N.C. 679, 149 S.E.2d 27 (1966); *Wargo v. Wargo*, 48 Misc.2d 349, 265 N.Y.S.2d 37 (Sup.1965); *Gillham v. Federal Express Mon-*

*ey Order, Inc.*, 112 Ga.App. 171, 144 S.E.2d 557 (1965) ("clear contractual provisions" required to relieve bailor of obligation of proving bailee's negligence); *Freeport Motor Cas. Co. v. McKenzie Pontiac, Inc.*, 171 Neb. 681, 107 N.W.2d 542 (1961); *Federal Ins. Co. v. International Harvester Co.*, 164 Neb. 698, 83 N.W.2d 382 (1957).

**10.** Dunn concedes that sufficient evidence supports an award of additional rent but disputes the amount awarded. Dunn concedes that the jury reasonably could infer that it owed CFC $372.00 on the Ramada Renaissance Hotel and $2,525.98 on the D.H. Holmes department store. Dunn, however, neglects to mention the $2,978.70 owed on the St. Dominic Hospital for which there is similarly sufficient evidence sup-

tled to infer from the available evidence that Dunn was contractually obliged to pay the freight and sale charges, we affirm the district court's judgment to that extent.

The jury awarded plaintiff $1,526.24 for unpaid shipping charges on the Ramada Renaissance project. Dunn argues on appeal that a purchase order accompanying one shipment to the Ramada site assigned responsibility for freight charges to CFC. CFC asserted at trial that this purchase order and its attendant designation of responsibility for the freight charges governed that shipment only. Other purchase orders [11] do impose responsibility for freight charges upon Dunn, and the jury was thus provided a sufficient basis for concluding that Dunn owed CFC the amounts stated.

Dunn unsuccessfully asserted at trial that it was not responsible for reimbursing CFC for the "loop ties" consumed in the construction process. Sufficient evidence similarly supports the jury's award in this regard.

## V.

CFC cross-appeals the district court's denial of its motion for prejudgment interest on the damages for unpaid rent, freight, and sale of equipment. We reverse a district court's denial of a motion for prejudgment interest only if the district court abused its discretion. *Dunn v. Koehring Co.*, 546 F.2d 1193, 1201 (5th Cir.1977); *Charles Stores, Inc. v. Aetna Ins. Co.*, 490 F.2d 64, 70 (5th Cir.1974). Under Mississippi law, a plaintiff is entitled to prejudgment interest when the amount owed to it is liquidated and the denial of the claim was in bad faith. *Simpson v. State Farm Fire & Casualty Co.*, 564 So.2d 1374, 1380 (Miss.1990) (quoting *Aetna Casualty & Surety Co. v. Boleac Elec. Co.*, 471 So.2d 325, 331 (Miss.1985)). We cannot say that the district court abused its discretion in applying this rule.

porting the jury's verdict. These three amounts total the $6,911.38 awarded. We affirm this award.

**11.** For example, invoice number 66977, upon which CFC partially relies in seeking additional

## VI.

In summary, we REVERSE the district court's denial of Dunn's motion for directed verdict and direct the district court to render judgment in Dunn's favor with respect to the shortages and damaged equipment. We AFFIRM the district court's judgment with respect to the rent, freight, and sales awards and with respect to prejudgment interest. We REMAND for further proceedings consistent herewith.

freight, states "F.O.B. Houston" rather than "F.O.B. jobsite."